## MATTER OF FARUQUE

### In VISA PETITION Proceedings

### A-12863574

*Decided by Board May 12, 1964*

Since a Moslem divorce obtained *in absentia* in Pakistan in accordance with section 7 of the Muslim Family Laws Ordinance, 1961, Ordinance No. VIII of 1961, by a native and citizen of Pakistan while living in England, is recognized as valid in England for the purposes of a subsequent marriage in that country, such subsequent marriage in England to a U.S. citizen is a valid marriage for immigration purposes and serves to confer nonquota status.

The case comes forward on appeal from the order of the Officer-in-Charge, Frankfurt, Germany, dated March 2, 1964 denying the visa petition on the ground that the petitioner's marriage to the beneficiary is not considered valid because the beneficiary's divorce from his first wife was not valid.

The file does not contain a Form I-130, petition to classify status of aliens for issuance of immigrant visa. However, the facts are fully set forth in the order of the Officer-in-Charge. The petitioner is a native-born citizen of the United States, 25 years old. She seeks nonquota status on behalf of the beneficiary, a native and citizen of Pakistan, 33 years old. The parties were married on December 2, 1963, in the Registrar Office of West Hartlepool, England. The petitioner had never been married previously while the beneficiary has been married once previously. The present visa petition was submitted on December 12, 1963.

The order of the Officer-in-Charge sets forth the facts in full detail. The beneficiary was previously married to Majida Banu, a native and citizen of Pakistan, in Jessore, Pakistan, on August 28, 1952 in accordance with Moslem custom, both parties being of that faith. Two children were born of that marriage and presently live in Pakistan with their mother. The beneficiary was admitted at New York on June 27, 1958 as an exchange visitor destined to the Lima Memorial Hospital, Lima, Ohio, where he was to receive training as an interne.

On October 10, 1962 the petitioner had filed a visa petition to accord the beneficiary nonquota status under section 101(a)(27)(A) of the Immigration and Nationality Act on the basis of a marriage ceremony between the parties at Chicago, Illinois, on July 10, 1960. At that time the beneficiary alleged that his first marriage had been terminated in June 1959 when in accordance with Moslem custom he wrote his first wife's father declaring his intention to be divorced and in addition to this written declaration he stated that in April 1960 he made an oral announcement of his divorce in Chicago, Illinois before a Pakistani national, acquainted with both the beneficiary and his first wife. This visa petition was denied on March 5, 1963 for the reason that the petitioner's marriage to the beneficiary was not considered valid because the beneficiary's divorce from his first wife was not valid under the laws of the state in which he was present at the time the divorce was obtained. On April 8, 1963 this Board, relying upon the decisions in *Matter of H—*, 6 I. & N. Dec. 470, *Matter of M—*, 7 I. & N. Dec. 556 and the case of *Shikoh* v. *Murff*, 257 F. 2d 306 (2d Cir. 1958) held that the attempted divorce, which was not secured in accordance with the laws of the jurisdiction where the beneficiary then resided, could not be regarded as valid and dismissed the appeal from the order of the Officer-in-Charge.

The memorandum reflects that the beneficiary and the petitioner left the United States on September 17, 1960 and presently reside in England and are the parents of a son. After the decision of the Board on April 8, 1963, petitioner engaged an English legal firm as solicitor. The latter in turn took counsel from Mr. Abbas, Barrister-at-Law in England and advocate of the Supreme Court of Pakistan. Acting upon counsel's advice, the beneficiary by registered letter dated April 24, 1963, conveyed his intention of divorcing his first wife, Majida Banu, to the Chairman of Shahbazpur Union Council in Pakistan and sent a registered copy of the letter to his first wife on April 30, 1963. On July 9, 1963 the beneficiary signed a declaration of divorce "before a Notary Public in England which was legalized" in the office of the High Commissioner for Pakistan in the United Kingdom. The solicitor, acting on behalf of the beneficiary, is stated to have posted the declaration of divorce by registered mail on July 16, 1963 to the Chairman of Shahbazpur Union Council and on the same date is said to have posted by registered mail a copy of the document to the Registrar at Nikah, Pakistan. This procedure is stated by counsel to constitute a lawful divorce or "Talaq" under the Muslim Family Laws Ordinance, 1961 of Pakistan. The affidavit of Barrister Abbas dated September 10, 1963 is attached as Exhibit 2, and contains enclosures setting out the declaration of the beneficiary, and the note of divorce of July 1, 1963 to Majida Banu and the notice of intention

to divorce of April 24, 1963 to the Chairman of Shahbazpur Union Council #9 in Pakistan and the other letters connected with the matter.

There followed subsequent correspondence between the Officer-in-Charge and the solicitor for the petitioner requesting additional information in the nature of interrogatories regarding various aspects of the Moslem divorce. On December 31, 1963 the solicitor replied (Ex. 3) to the effect that the Registrar General of England was satisfied with the validity of the beneficiary's divorce and issued an authority to the Local Registrar in West Hartlepool to proceed with the marriage ceremony; that the domicile of the beneficiary is Pakistan and his country of residence at the moment England; that the divorce was never before the Pakistan Court as there is no procedure under the laws of Pakistan for court proceedings in respect to a divorce. The solicitor further answered (Ex. 4) that it must be taken for granted that the Registrar General of England was satisfied with the divorce and cited a case in point concerning the validity and the recognition of such a divorce under English Law. Additional information is furnished by Barrister Abbas (Ex. 5) outlining additional reasons why the divorce is valid in Pakistan and is recognized by the English Courts, citing cases and also citing that no divorce can be granted in the English Court of a "polygamous marriage." This latter phrase is indicated by counsel to apply to a marriage under a system which permits polygamous marriage even though the marriage in question may be monogamous. Mr. Abbas further indicated (Ex. 6) that the beneficiary retained his domicile in Pakistan despite his temporary residence in the United States and England, citing authorities, and further clarified his statements so that the English Courts would not assume jurisdiction of a potentially polygamous marriage which is permitted under the laws of a foreign country, even though in fact there was only one marriage. Mr. Abbas appeared to agree with the decision of this Board in regard to the attempted divorce by the beneficiary in 1959 while residing in the United States which was held to be ineffective because of the manner of which it was procured.

By letter of June 5, 1963 to the American Consulate at Dacca, East Pakistan, the beneficiary's first wife, Majida Banu, advised that the beneficiary's notice of divorce of April 24, 1963 addressed to the Chairman of the Shahbazpur Union Council had been received but claimed that the notice of divorce was not effective under the provisions of Muslim Family Laws Ordinance of Pakistan and that her position is that she is still the lawful undivorced wife of the beneficiary (Ex. 8). The beneficiary subsequently wrote that there had been no divorce; that the divorce had not been done in accordance with Pakistan Law; that she did not consent to the divorce; that the divorce is not recognized

and that the beneficiary irregularly sends money to her father for the benefit of herself and her children (Ex. 9). The beneficiary's first wife also enclosed a copy of a letter dated October 5, 1963 which had been sent by her lawyer, an Advocate of the Dacca High Court, East Pakistan to petitioner's solicitor to the effect that the so-called divorce in question is illegal, void and inoperative under the present law of Pakistan, namely the Muslim Family Laws Ordinance of 1961 with amendments and that Majida Banu is still the lawful wife of the beneficiary. It may be noted that this letter gives no legal citations or authority.

No divorce decree issued by a court in Pakistan has been presented allegedly because there is no court proceeding from which a decree can emanate. This contention is backed up by the opinion of counsel who is an Advocate of the High Court of East Pakistan and of the Supreme Court of Pakistan and a Barrister at Law in England to the effect that the divorce ceremony undertaken by the beneficiary is valid under section 7 of the Pakistani Family Laws Ordinance, 1961, Ordinance No. VIII of 1961. Such a divorce is therefore recognized as a matter of international comity under English Law and by the same token would be recognized as valid in the United States for immigration purposes. The Officer-in-Charge, who apparently has not been able to reconcile the conflicting claims of opposing counsel, concludes that doubt has been cast upon the contention of the beneficiary that he was divorced and denies the visa petition. It is believed that the matter should be further explored.

The file contains a report dated January 23, 1964 from the American-British Law Division of the Library of Congress, Washington, D.C. setting out the text of the Pakistan Muslim Family Laws Ordinance 1961, Ordinance No. VIII of 1961 and citations which might be applicable to the validity of a divorce under Pakistani and English Law (Ex. 7). This report is helpful only in a general way and does not pretend to represent an opinion of the law library but constitutes solely references to legal sources dealing with the general subject matter of the inquiry. The report sets out the provisions of section 7(1) of the Muslim Family Laws Ordinance, 1961 which provides that any man who wishes to divorce his wife shall, as soon as may be after the pronouncement of *talaq* in any form whatsoever, give the Chairman [1] notice in writing of his having done so, and shall supply a copy thereof to the wife. Section 7(3) states that save as provided in sub-section

---

[1] The file contains a copy of the Muslim Family Laws Ordinance, 1961 and defines the term "Chairman" in section 2(b) to mean the Chairman of the Union Council or a person appointed by the Central or a Provincial Government, or by an officer authorized in that behalf by any such government, to discharge the functions of Chairman under this Ordinance.

(5) [2] a *talaq* unless revoked earlier, expressly or otherwise, shall not be effective until the expiration of ninety days from the day on which notice under sub-section (1) is delivered to the Chairman.

The report from the Library of Congress goes on to state with the respect to the recognition of foreign divorces under English Law, the English courts will recognize a foreign decree of divorce or nullity where the decree, though made in a country in which the parties are not domiciled, is valid in the country of the parties' domicil.[3] It quotes Halsbury's Laws of England, (3rd ed., London, 1954), Volume 7, pages 113–15, to the effect that a divorce pronounced by the court of the country of the domicil is recognized as valid in England, (subject to very limited qualifications which are not material herein). The English courts will recognize as having extraterritorial validity any decree of divorce which is also recognized as valid by the courts of the country of the domicil, whether those courts have themselves pronounced the decree or not. Reference must always be made to the law of the domicil at the time of the decree, wherever the decree may have been obtained and, provided that the courts of the country of the domicil recognize its validity, the English courts will give effect to it. The decree pronounced must be in accordance with the laws of that country. Such a decree, once pronounced, is in the nature of a judgment *in rem* because it affects status.

In a case involving a prior marriage in the United States which was terminated by the first wife's procurance of a Mexican *in absentia* divorce while both spouses were residents in the United States, and subsequently the husband married a German wife in Germany which recognized such divorce decrees, the Attorney General applied the generally accepted rule that the validity of a marriage is governed by the law of the place of celebration.[4] The case of *Shikoh* v. *Murff*,[5] involved a Pakistani who attempted to obtain a Moslem divorce from the head of the Islamic Mission of America at Brooklyn, New York, while residing in the State of New York as a student, and thereafter registering such copies of the "certificate of divorce" with the Solicitor General of Pakistan at New York and sending copies to the appellant's wife by the consulate general. The court held that such a divorce, while it might be valid in Pakistan, was not valid in New York because it is not obtained in accordance with the laws of that state. The court distinguished cases sustaining the validity of foreign di-

---

[2] Sub-section [5] provides that if the wife be pregnant at the time talaq is pronounced, talaq shall not be effective until the period mentioned in sub-section (3) or the pregnancy, whichever be later, ends.

[3] Tolstoy, *The Law and Practice of Divorce* (London, 1963), page 20.

[4] *Matter of P——*, 4 I. & N. Dec. 610 (A.G., 1952).

[5] 257 F.2d 306 (2d Cir. 1958).

vorces obtained by both parties who were physically present within the United States since the divorce was actually granted in the foreign jurisdiction in which the parties were domiciled.[6]

The instant case is parallel to that of the case of *Matter of P—*, 4 I. & N. Dec. 610, where Germany, the place of celebration of the marriage, recognized a Mexican *in absentia* divorce decree which is generally not recognized in the United States.[7] English Law as is set forth by the report from the Library of Congress, apparently recognizes Moslem divorce decrees obtained in accordance with the law of that jurisdiction where the domicil remains in Pakistan. Apparently the Registrar General, Somerset House of London, was contacted by the solicitor for the petitioner with regard to the validity of the beneficiary's divorce and the Registrar General was ultimately satisfied as to such validity and issued an authority to the local registrar to proceed with the ceremony of the marriage of the petitioner and the beneficiary. Counsel for the petitioner has cited law in cases which are persuasive that the Moslem divorce was obtained in accordance with Section 7 of the Muslim Family Laws Ordinance, 1961, Ordinance No. VIII of 1961 and is valid.

The communication from counsel for the first wife sets forth no citations of law to support his contention that the divorce was not valid under Moslem or English law. The appeal will be sustained.

**ORDER:** It is ordered that the appeal be sustained and that the visa petition be approved for nonquota status on behalf of the beneficiary.

---

[6] Citing at page 309 the cases of *Weil* v. *Weil*, 26 N.Y.S. 2d 467; *Oetten* v. *Oetten*, 94 N.Y.S. 2d 168; *Hansen* v. *Hansen*, 8 N.Y.S. 2d 655.

[7] Cf. *Matter of B—*, 1 I. & N. Dec. 677, where a German national, who had a substantial claim to German domicil obtained a divorce in Germany while residing in the United States, the alien having executed a power of attorney, which was held valid upon the principle of international comity and because there was no state in this country interested in the respondent's matrimonial status.