MATTER OF KURTIN

In Visa Petition Proceedings

A-14231007

*Decided by Board May 25, 1967*

A divorce decree granted in absentia in Yugoslavia in 1963 to two nationals of that country, one of which was then living in Canada and the other (beneficiary) in California, is recognized as valid in the State of California (section 1915, Code of Civil Procedure) where the marriage occurred in Yugoslavia, both parties were duly represented in the divorce proceedings, and beneficiary testified there was no attempt to evade California law.

ON BEHALF OF PETITIONER: Milton T. Simmons, Esquire
Phelan, Simmons & Ungar
1210 Mills Tower
San Francisco, California 94104
(Brief filed)

The case comes forward pursuant to certification by the District Director, San Francisco District, dated January 12, 1967 holding that inasmuch as the burden of proof of the validity of the marriage is upon the petitioner in immigration proceedings and the petitioner has failed to show that the laws of the State of California, where the subsequent marriage was celebrated, does recognize the validity of the divorce granted in absentia by a court in Yugoslavia, the previous denial of the visa petition by the Acting District Director, San Francisco District on June 27, 1966 on the basis that it has not been established that the beneficiary was legally free to enter into the marriage with the petitioner at Los Angeles, California on March 11, 1966 was proper.

The petitioner, a naturalized citizen of the United States, seeks immediate relative status on behalf of his wife, a native and citizen of Yugoslavia. The parties were married at Los Angeles, California on March 11, 1966. A prior marriage of the petitioner was terminated by a divorce in the Superior Court of the State of California for the County of Los Angeles on March 9, 1966.

The file indicates that the beneficiary last entered the United States at San Francisco, California on October 18, 1962 as a visitor for

pleasure. She previously had been married to Mato Gugich, a native and citizen of Yugoslavia, at Vela Luka, Yugoslavia on June 5, 1954. They lived together as husband and wife until the end of 1955 when her husband escaped from Yugoslavia to Italy and subsequently emigrated to Canada where he apparently remarried without benefit of divorce. The beneficiary, after her arrival in the United States, attempted to contact her husband in Vancouver, B.C., Canada. Upon learning that he was married to another, she sent a power of attorney to a lawyer in Yugoslavia to institute divorce proceedings. The file contains a decree of the District Court of Dubrovnik, Yugoslavia in which the beneficiary was represented by an attorney and her first husband, Mato Gugich, was represented by his father, his whereabouts being unknown. The Yugoslav court granted a divorce on September 3, 1963 and the beneficiary was granted custody of their two children.

When the case was last before us on September 15, 1966 we pointed out that the beneficiary and her first husband were natives and citizens of Yugoslavia and that the marriage had occurred in that country. She was a resident of the United States but was in a nonimmigrant status and was still a national of Yugoslavia. It was suggested that the basis for jurisdiction of the Yugoslavian court should be explored. It was suggested that the provisions of the California Code of Civil Procedure, section 1915, appeared to be applicable. Section 1915 provides:

> A final judgment of any other tribunal of a foreign country having jurisdiction, according to the laws of such a country, to pronounce the judgment, shall have the same effect as in the country where rendered, and also have the same effect as final judgments rendered in this state.

The case was remanded for further proceedings in the light of section 1915, California Code of Civil Procedure, and to have the beneficiary questioned whether it was her intention to evade the California law when she obtained the Yugoslav divorce.

Upon remand, the Library of Congress, European Law Division, was consulted to establish the basis for the jurisdiction of the Yugoslav court, and a report entitled "Divorce of Yugoslav Citizens Residing Abroad" is annexed and made a part hereof. In pertinent part the report stated that if the spouses have no common domicile in Yugoslavia and one of them is a Yugoslav citizen at the time of the filing of the divorce and the defendant has no domicile or residence, but the plaintiff has, the court, within the territory of which the plaintiff has domicile or residence, shall have jurisdiction. If the plaintiff does not have his residence or domicile in Yugoslavia either, the Supreme Court of Yugoslavia shall determine which district court shall have jurisdiction to try the case. It is further stated that the personal ap-

285

pearance of the parties in a divorce case is not a necessary requirement. A spouse may file a divorce suit through a duly appointed representative but the cause for divorce must be stated in the power of attorney.

The District Director concedes that on the basis of this report from the Library of Congress that neither domicile nor personal appearance is a jurisdictional requirement under the laws of Yugoslavia. In addition, the beneficiary stated under oath to a Service officer on December 5, 1966 that she did not obtain her divorce in Yugoslavia for the purpose of evading any of the laws of the State of California. The District Director stated that the courts of California have generally refused to recognize "in absentia" Mexican mail order divorces where neither party to the divorce proceedings was physically present within the jurisdiction of the Mexican court although they have recognized divorces granted in Mexico where the plaintiff was physically present within the jurisdiction of such court, citing *Matter of B—*, 5 I. & N. Dec. 659, and *Matter of P—*, 4 I. & N. Dec. 610. The District Director equated the present divorce decree with a Mexican "mail order" divorce in which the plaintiff institutes the divorce by correspondence, neither party being physically present in the country where the divorce was rendered, and concludes that such divorces have been held invalid in the State of California, notwithstanding section 1915, Code of Civil Procedure.

Counsel takes issue with the finding that the divorce in the present case is the equivalent of a "Mexican mail order" divorce and decree in which the California courts have found that the Mexican court divorce was procured by fraud perpetrated on the courts of Mexico. Counsel cites the case of *Scott v. Scott*, 51 Cal.2d 249, 254–256; 331 P.2d 641 (1958), in which the foreign divorce decree was recognized. In a concurring opinion, Justice Traynor stated:

Critics, however, have pointed out that a country other than the domicile may have a legitimate interest in the marital status of the parties, even though it does not accept the common law jurisdictional concept of domicile. See Howe, The Recognition of Foreign Divorce Decrees in New York State, 40 Colum. L. Review 373, 375–376; 40 Cal. L. Review 93, 99–100. New York courts recognize civil law decrees obtained without domicile (*Gould v. Gould*, 235 N.Y. 14, 138 N.E. 490) and, under certain circumstances, English courts do not make domicile a condition for the recognition of a foreign divorce decree. * * *

* * * There should be no implication from the court's opinion finding domicile that would preclude contacts with the foreign country other than domicile as a basis for jurisdiction. * * *

The first task of the court [under section 1915] is to determine whether or not the foreign court had jurisdiction under its laws. The court must then go on to determine whether recognition of the foreign decree would violate due process limitations or established local policy. If there is no such violation, a decree of

·divorce that is valid according to the laws of the country should be recognized here. * * *

There is no reason to read in the requirement of domicile or bona fide residence into the statute. The status of persons as married or not married should be ascertainable with reasonable certainty. The valid judgments of courts of other countries should therefore be respected unless they run counter to local policy. The public policy of California may not permit the recognition of a foreign divorce decree when the foreign jurisdiction has no legitimate interest in the marital status of the parties, when the sole purpose of seeking the divorce in a foreign court is to evade the laws of this state (see Civil Code 150–150.4) or when the divorce is ex parte without reasonable notice to the defendant.

In the case of *Rediker* v. *Rediker*, 221 P.2d 1, 35 C.2d 796, the court observed that personal service on an absent spouse is not a jurisdictional requirement, if the action is brought in the state of domicile of the complainant, citing cases. Constructive service on the absent spouse gives the court of the state of domicile jurisdiction of the cause and the parties. In the absence of competent contrary evidence, it must be presumed that the foreign court had jurisdiction and that its recital thereof was true.

In a case similar in many respects to the instant case, *Matter of Koehne*, 10 I. & N. Dec. 264, we held that a divorce decree granted in absentia in Hungary in 1962 to two nationals of that country then domiciled and physically present in New York is, in the exercise of comity, recognized as valid by the State of New York, the marriage having occurred in Hungary and both parties having entered appearance in the Hungarian divorce proceedings through counsel. It was pointed out in *Matter of Koehne*, *supra*, that the courts of the State of New York in the exercise of comity have on several occasions recognized foreign divorce decrees where there was a showing that the foreign court assumed jurisdiction over the marital res by reason of the fact that the marriage had been celebrated within the jurisdiction of the court and had assumed jurisdiction over the parties by reason of their voluntary appearance and joinder although they were never physically present before the foreign court and at least one of the parties continued to be a resident of the State of New York.[1]

A decree of divorce rendered in a foreign country is accorded recognition, if at all, on the ground of comity. Whether recognition will be granted on the ground of comity depends on whether the decree conforms to the public policy and good morals of the state in which the recognition is sought.[2] Many countries take jurisdiction of an action involving their own citizens, even though neither party is

---

[1] Citing *Hansen* v. *Hansen* 8 N.Y. Sup.2d 655; *Well* v. *Well*, 26 N.Y. Sup. 2d 467; *Oettgen* v. *Oettgen*, 94 N.Y. Sup.2d 168.

[2] *Divorce*, 27B, C.J.S. s. 329

domiciled in the country of citizenship; other countries take jurisdiction if the defendant resides within their borders; others take jurisdiction if both parties reside but are not necessarily domiciled therein; and still others, only if they are the place of matrimonial domicile, regardless of the present domicile of either party.[3]

We have recognized a Moslem divorce obtained in absentia in Pakistan by a native and citizen of Pakistan while living in England which is recognized as valid in England for the purpose of a subsequent marriage in that country. Under English law, a foreign divorce decree will be recognized where the decree is valid in the country of the domicile of the parties; the English courts will recognize having extraterritorial validity any decree of divorce which is also recognized as valid by the courts of the country of the domicile; the decree pronounced must be in accordance with the laws of that state; such a decree when pronounced, is in a nature of a judgment in rem because it affects status.[4] A divorce procured under Jordanian-Moslem law by a Jordanian national, terminating his Jordanian marriage was recognized even though the person was then living in Puerto Rico and secured his divorce by proxy through a duly executed power of attorney since such divorce was valid under Jordanian-Moslem law and under ordinary rules of international comity was recognized.[5]

The District Director has equated the divorce obtained in the instant case with a Mexican "mail order" divorce. However, there are very apparent differences between this divorce and the "in absentia" or "mail order" Mexican divorce. In the latter case there exists either no basis for jurisdiction or the parties were domiciliaries of California and attempted to evade the jurisdiction of the California court and to confer jurisdiction upon the Mexican court by fraud. In the instant case the beneficiary and her first husband were natives and citizens of Yugoslavia and the first marriage was celebrated in Yugoslovia. Under Yugoslavian law there was a nexus for the jurisdiction of the Yugoslavian court. The beneficiary stated that after learning that her first husband had remarried, she sought to obtain a divorce in Yugoslavia and has denied that her purpose in obtaining this divorce was to evade any laws of the State of California. Her Yugoslavian divorce decree was granted on the basis of desertion and abandonment. We have already determined that the Yugoslavian court had a legal basis for jurisdiction of the divorce. Recognition of the foreign divorce decree, where the beneficiary was represented by an attorney

[3] *Vreeland, Validity of Foreign Divorces*, 293, 296, 299–305, 277–282, 305, 308, 257, 262, 309; *Ley De Divorcio*, Chihuahua, Article 31, 293–297 (1933).

[4] *Matter of Faruque*, 10 I. & N. Dec. 561.

[5] *Matter of Hassan*, Int. Dec. No. 1469.

and her husband was represented by his father, the whereabouts of the husband being unknown, would appear to conform with due process limitations and not to contravene established local policy of California. There is judicial authority to accord recognition to a foreign divorce such as exists in the instant case under section 1915 of the California Code of Civil Procedure. Upon a full consideration of all the circumstances of the case, the Yugoslavian divorce acted as a lawful termination of the beneficiary's prior marriage and left the beneficiary free to marry. The visa petition will be approved.

**ORDER:** It is ordered that the visa petition be approved for immediate relative status on behalf of the beneficiary.

### DIVORCE OF YUGOSLAV CITIZENS RESIDING ABROAD

I. *Sources of Law*

Divorce cases are tried and determined in accordance with the provisions of the Marriage Law of April 3, 1946, sections 55-63, 72-81,[1] and the Code of Civil Procedure of December 8, 1956.[2]

II. *Court jurisdiction to Try Divorce Cases of Citizens Residing Abroad*

As a rule, the district court (*okružni sud*), within the territory of which the spouses had their last common domicile, has jurisdiction to try divorce suits.[3] However, if the spouses have no common domicile in Yugoslavia and if one of them is a Yugoslav citizen at the time of the filing of the divorce suit and the defendant has no domicile or residence in Yugoslavia but the plaintiff has, the court, within the territory of which the plaintiff has his domicile or residence, shall have jurisdiction. If the plaintiff does not have his residence or domicile in Yugoslavia either, the Supreme Court of Yugoslavia shall determine which district court shall have jurisdiction to try the case.[4]

III. *Personal Appearance at Trial Not Required*

The personal appearance of the parties in a divorce case is not a necessary requirement. A spouse may file a divorce suit through a duly appointed representative,[5] but the cause for divorce must be stated in power of attorney.[6]

When a divorce is sought in agreement between the parties con-

---

[1] *Službeni list Federativne Narodne Republike Jugoslavije*, No. 29, 1946.

[2] *Ibid.*, No. 4, 1957.

[3] Code of Civil Procedure of 1956, sec. 47, par. 1.

[4] *Ibid.*, sec. 47, par. 2.

[5] Srečko Zuglia. *Gradjanski parnični postupak FMRJ.* Zagreb, 1957. p. 595.

[6] Marriage Law of 1946, sec. 74, par. 2; Code of Civil Procedure of 1956. sec. 400.

cerned, proceedings are initiated by filing a motion which is agreed upon by the parties. The court shall decide upon the motion by judgment.[7]

When one or both spouses reside abroad, no reconciliation attempt shall be made by the court.[8]

IV. *Service of Process*

Service of process is governed by sections 122–132 of the Code of Civil Procedure of 1957, in particular sections 125, paragraph 2, 130–131.[9]

Service of process upon a Yugoslav citizen abroad may be made through the competent Yugoslav consular representative. Such service is valid if the party concerned agrees to accept it (sec. 125, par. 2).

Under the general provisions a complaint must be personally served upon the defendant or his legal representative. If the defendant is not at his place of abode, the official in charge of the service shall inquire where the defendant may be found and shall leave with the janitor or a neighbor a written notice for the defendant to be at his place of abode on a specified day and hour in order to receive the complaint. If the defendant does not appear as summoned, service of process shall be made upon the janitor or a neighbor. Such service shall be considered valid (sec. 130–131).

Prepared by
Dr. Fran Gjupanovich
European Law Division
Law Library, Library of Congress
October 1966

---

[7] Code of Civil Procedure of 1956, sec. 399.

[8] *Ibid.*, sec. 402, par. 3, No. 2.

[9] Official Gazette of the Federal People's Republic of Yugoslavia No. 4, 1957.