[L. A. No. 24855.   In Bank.   Nov. 18, 1958.]

JOHN W. SCOTT, Respondent, v. WINIFRED C. SCOTT, Appellant.

Monta W. Shirley and George W. Nilsson for Appellant.

Hahn, Ross & Saunders and E. Loyd Saunders for Respondent.

McCOMB, J.—Defendant Winifred C. Scott appeals from a judgment in a declaratory relief action decreeing that a divorce procured by plaintiff from her in the District of Bravos, State of Chihuahua, Republic of Mexico, on March 17, 1956, was valid.

## CHRONOLOGY

i. January 10, 1931, plaintiff and defendant Winifred were married.

ii. July 9, 1948, they separated.

iii. In 1952 plaintiff procured a Mexican divorce from Winifred in Juarez, Chihuahua, Mexico.

iv. December 5, 1952, plaintiff married defendant Elli Scott.

v. December 11, 1952, Winifred filed a separate maintenance action against plaintiff in the Superior Court of Los Angeles County.

vi. May 9, 1953, the Superior Court of Los Angeles County awarded Winifred separate maintenance and held

that the Mexican divorce decree procured by plaintiff in 1952 was invalid.

vii. In January 1955 plaintiff, having retired from the United States Army, went to Guadalajara, in the State of Jalisco, Republic of Mexico, and employed an attorney to obtain another divorce from Winifred. The attorney filed an action in the State of Jalisco, but the judge refused to hear the case, saying that, so far as he was concerned, the Mexican divorce which plaintiff had procured in 1952 was valid and that plaintiff could obtain a rehearing on it only under another set of circumstances and charges in the State of Chihuahua.

viii. In January 1956 plaintiff went back to Juarez, in the State of Chihuahua, and filed a complaint for divorce against Winifred, a copy of which was served upon her by mail in Omaha, Nebraska. The hearing in this divorce proceeding was held on January 14, 1956, at which time plaintiff personally testified therein.

ix. March 2, 1956, the Superior Court of Los Angeles County, upon the application of defendant Winifred, after service by mail on plaintiff, issued the following injunction: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendant, JOHN W. SCOTT, his servants and his agents, be permanently restrained and enjoined from proceeding with, and from maintaining the validity of, any divorce proceeding, or divorce decree obtained, in that certain proceeding instituted by defendant herein on or about the 16th day of January, 1956, against plaintiff herein for a divorce in the Second Civil Court, City of Juarez, Chihuahua, Mexico, the copies of the Summons and Complaint in said proceedings having been served upon the plaintiff herein on or about the 25th day of January, 1956, as is more fully described in the Affidavit of Winifred C. Scott in Support of Injunction on file herein."

x. March 17, 1956, defendant Winifred having failed to appear in the action, another decree of divorce was granted to plaintiff from her by the Mexican court in the State of Chihuahua.

xi. July 26, 1956, plaintiff filed an application in the Los Angeles Superior Court separate maintenance action seeking a modification of the support decree, alleging that he had procured a divorce from Winifred in Mexico on March 17, 1956. In August 1956 the Superior Court of Los Angeles County

made an order denying plaintiff's application for a modification of the support decree and made, among others, this finding: "That the Decree of Divorce obtained by the defendant in the State of Chihuahua on March 17, 1956, is contrary to and is in violation of the injunction issued against the defendant in this action on March 2, 1956, whereby the defendant was restrained from proceeding with any divorce proceedings instituted in the City of Juarez, State of Chihuahua, Mexico. . . . *For the purposes of this hearing, there is no finding as to the validity or the invalidity of the Mexican decree of divorce obtained by the defendant from the plaintiff on March 17, 1956. . . .*" (Italics added.)

xii. August 23, 1956, plaintiff filed the present action for declaratory relief, alleging that he had procured a valid decree of divorce from Winifred on March 17, 1956. Winifred filed an answer to the complaint, and after trial the court entered judgment in favor of plaintiff, declaring:

"A. That the Judgment of Divorce between John W. Scott, the plaintiff, and Winifred C. Scott, the defendant, dated March 17, 1956, in the State of Chihuahua, Republic of Mexico, is a valid and subsisting divorce.

"B. That Winifred C. Scott is not the wife of John W. Scott, and that the defendant Elli Scott is the wife of John W. Scott.

"C. That there is the relation, the rights and duties of husband and wife as between the plaintiff, John W. Scott, and the defendant Elli Scott."

*Questions*: First. *Was the second Mexican decree of divorce procured by plaintiff from defendant Winifred C. Scott invalid because there was a subsisting separate maintenance decree between the parties on March 17, 1956, the date said second Mexican decree was entered?*

*No.* [1] The following rule is here applicable:

Although there is a subsisting separate maintenance decree, another jurisdiction can grant a divorce to one of the parties and validly terminate the relation of husband and wife.

In *Estin* v. *Estin,* 334 U.S. 541 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412], a wife procured a separate maintenance decree in New York. Thereafter the husband went to Nevada and, upon constructive service, was granted an ex parte Nevada divorce decree.

The Supreme Court of the United States held that the Nevada decree was entitled to full faith and credit, saying, at page 546: "The State has a considerable interest in prevent-

ing bigamous marriages and in protecting the offspring of marriages from being bastardized'' and again, at page 549: ''The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern.'' (See also *Worthley* v. *Worthley,* 44 Cal.2d 465, 468 ▨ [283 P.2d 19].)

▨ Second. *Was plaintiff a bona fide resident of Mexico on March 17, 1956?*

*Yes.* The trial court found that plaintiff was a bona fide resident of Mexico on March 17, 1956, when he procured the second decree of divorce from Winifred.

This finding is amply supported by the following evidence in the record: (a) Plaintiff had resided in Mexico from January 5, 1955, to about July 1956; (b) he was unable to work, except that he was writing books and short stories while in Mexico; (c) he was a retired Army officer, whose pension was not sufficient to support him in the United States, and he therefore lived in Mexico, where his expenses were less; (d) he leased a residence in Mexico, and his furniture had been there for a long period of time and was there at the time of trial; and (e) he expected to return to Mexico when the present litigation was terminated and live there the rest of his life.

▨ Third. *Was the second divorce decree which plaintiff procured in Mexico a valid divorce decree?*

*Yes.* A Mexican attorney who qualified as an expert on the laws of Mexico testified that he had examined the divorce proceedings and the decree granted March 17, 1956, and that under the laws of Mexico plaintiff had been granted a valid decree of divorce from Winifred, which decree would be recognized in the State of Chihuahua and all over Mexico. This being true, the general rule is applicable that where a party has established a bona fide residence in Mexico and obtained a Mexican decree of divorce, such decree is entitled to full faith and credit in California. (*Cf. DeYoung* v. *DeYoung,* 27 Cal.2d 521, 524 [1] et seq. [165 P.2d 457].)

▨ Fourth. *Did the injunction which was granted on March 2, 1956, invalidate the divorce decree of March 17, 1956?*

*No.* The ex parte injunction restraining plaintiff from pro-

ceeding with the second divorce action in Mexico was never served on him, and he had no personal knowledge of it until after the divorce had been granted. The injunction was issued on March 2, 1956, but the hearing in the divorce proceeding had been held some weeks prior to that time, with plaintiff personally testifying therein, on January 14, 1956. Therefore, the California court purported to enjoin plaintiff from taking action which he had already taken. ■ Obviously an injunction cannot be granted to prohibit an act which has already occurred.

■ Fifth. *Was the ruling of the California court denying plaintiff's application for a modification of the separate maintenance decree res judicata in the present action on the question of the validity of the second Mexican divorce decree?*

*No.* In denying plaintiff's application for a modification of the separate maintenance decree, the trial court made the following finding: "For the purposes of this hearing, there is no finding as to the validity or the invalidity of the Mexican decree of divorce obtained by the defendant from the plaintiff on March 17, 1956."

The judgment is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I concur in the judgment.

Under the full faith and credit clause of the United States Constitution, the United States Supreme Court determines what effect state courts will accord judgments of courts of sister states.

As to judgments of courts of foreign countries, however, state courts have generally held that state law is controlling in the absence of treaties or federal legislation. (See Reese, *The Status in This Country of Judgments Rendered Abroad,* 50 Columb. L. Rev. 783, 787.) For the most part they have followed the rules applicable to judgments of courts of sister states. Given the customary invocation of domicile as the touchstone of divorce jurisdiction in this country, they have generally invoked it also as to divorce decrees of courts of foreign countries. They have refused to recognize such decrees, absent the domicile of either party in the other country, even when that country does not require domicile as a basis for divorce. (See 28 N.Y.U.L.Rev. 742, 743-745.)

Critics, however, have pointed out that a country other than

the domicile may have a legitimate interest in the marital status of the parties, even though it does not accept the common law jurisdictional concept of domicile. (See Howe, *The Recognition of Foreign Divorce Decrees in New York State,* 40 Columb.L.Rev. 373, 375-376; 40 Cal.L.Rev. 93, 99-100.) Likewise the New York courts recognize civil law decrees obtained without domicile in the country of the court issuing the decree (e.g., *Gould* v. *Gould,* 235 N.Y. 14 [138 N.E. 490]) and, under certain circumstances, the English courts do not make domicile a condition for the recognition of a foreign divorce decree. (E.g., *Travers* v. *Holley* [1953], P. 246; see *Manning* v. *Manning* [1958], 2 W.L.R. 318; Mann, *The Royal Commission of Marriage and Divorce: Jurisdiction of the English Courts and Recognition of Foreign Decrees,* 21 Modern L.Rev. 1; *Armitage* v. *Attorney General* [1906], P. 135; Griswold, *Divorce Jurisdiction and Recognition of Divorce Decrees—A Comparative Study,* 65 Harv.L.Rev. 193.)

This court has never expressly ruled on the question whether a finding of domicile is prerequisite to the recognition in this state of a divorce decree rendered abroad.[1] Although there was a finding of domicile in this case, there should be no implication from the court's opinion herein that would preclude contacts with the foreign country other than domicile as a basis of jurisdiction.

Section 1915 of the Code of Civil Procedure provides: "A final judgment of any other tribunal of a foreign country having jurisdiction, *according to the laws of such country,* to pronounce the judgment, shall have the same effect as in the country where rendered, and also the same effect as final judgments rendered in this state." (Italics added.) The first task of the court is thus to determine whether or not the

---

[1] In *DeYoung* v. *DeYoung,* 27 Cal.2d 521 [165 P.2d 457], we "assumed without deciding" that a divorce decree of a Mexican court could be collaterally attacked here if the plaintiff had not been domiciled in the jurisdiction granting the divorce. In *Rediker* v. *Rediker,* 35 Cal.2d 796 [221 P.2d 1, 20 A.L.R.2d 1152], we did not find it necessary to decide whether a foreign divorce decree could be attacked on these grounds, since it was to be assumed in the absence of evidence to the contrary that the plaintiff was a bona fide resident of Cuba and that therefore the foreign court had jurisdiction even if measured by our standards.

The District Courts of Appeal of this state have denied recognition to divorce decrees of a foreign country when domicile was lacking, even though the foreign country did not require domicile as a basis for divorce jurisdiction. (See, e.g., *Ryder* v. *Ryder,* 2 Cal.App.2d 426 [37 P.2d 1069]; *Harlan* v. *Harlan,* 70 Cal.App.2d 657 [161 P.2d 490].) These cases should be disapproved insofar as they make domicile a sine qua non of recognition.

foreign court had jurisdiction under the laws of its own country. The problem is not automatically settled, however, if there is a determination that there was jurisdiction. The court must then go on to determine whether recognition of the foreign decree would violate due process limitations or established local policy, for we cannot assume that in section 1915 the Legislature meant to override such limitations or policy. If there is no such violation, a decree of divorce that is valid according to the laws of the foreign country should be recognized here. (See Ruiz, *The Effect of Section 1915 of the Code of Civil Procedure on Migratory Divorces Procured in Foreign Countries,* 13 So.Cal.L.Rev. 294; Ehrenzweig, Survey of California Law 1950-1951, Conflicts of Laws, 141-142.)

There is no reason to read any requirement of domicile or bona fide residence into the statute. The status of persons as married or not married should be ascertainable with reasonable certainty. The valid judgments of courts of other countries should therefore be respected unless they run counter to local policy. The public policy of California may not permit the recognition of a foreign divorce decree when the foreign jurisdiction has no legitimate interest in the marital status of the parties, when the sole purpose of seeking the divorce in a foreign court is to evade the laws of this state (see Civ. Code, §§ 150-150.4), or when the divorce is ex parte without reasonable notice to the defendant. No such problem arises in the present case, since plaintiff was a bona fide resident of Mexico, neither party was a resident of California, and the defendant had reasonable notice.

Carter, J., concurred.

Appellant's petition for a rehearing was denied December 17, 1958.