**Julia LUCAS, Plaintiff,**

v.

**Wayne Wendell LUCAS, Defendant.**

**Civ. No. 5550.**

District Court, Canal Zone, Division Balboa.

Aug. 5, 1964.

Roy Phillipps, Balboa, Canal Zone, for plaintiff.

Albert J. Joyce, Jr., Balboa, Canal Zone, for defendant.

CROWE, District Judge.

On May 1, 1963 the plaintiff, Julia Lucas, filed this action against the defendant Wayne Wendell Lucas, wherein she alleged that she and the defendant were married on the 15th day of February, 1945 in Balboa, Canal Zone and lived together as man and wife until January 18, 1963 when they were separated. She alleged further that from the time of marriage to separation embraced a pe-

riod of approximately 18 years and that there were no children of the marriage.

The plaintiff further alleged that she was a resident of the Canal Zone and had resided therein since October, 1945 and that the defendant was a resident of the Canal Zone, living in House 2721–A, Cocoli. She charged that the defendant was guilty of mental cruelty toward her and prayed for a decree of separate, permanent maintenance and support, and asked that she be awarded $150.00 a month plus an attorney fee of $260.00.

The defendant, Wayne Wendell Lucas, was duly served by the Deputy United States Marshal with a summons and order to show cause at "Navy Exchange Garage" in the Canal Zone on May 2, 1963 and a hearing was had on May 7, 1963 with both the plaintiff and defendant in person, Attorney W. J. Sheridan, Jr. representing the plaintiff and Attorney Woodrow de Castro representing the defendant.

Counsel agreed that the case should be tried on that date and both the plaintiff and defendant testified under oath and the Court held that the plaintiff had proved her case and entered an order of permanent separation which directed the defendant to pay the plaintiff the sum of $125.00 monthly beginning May, 1963, and an attorney fee of $160.00 and costs.

Upon the request of the defendant, it was also ordered that the plaintiff remove herself from the Canal Zone quarters on or about June 1, 1963, which he complained that she still occupied at the time of trial. The order directing the payments and removal was not entered until June 14, 1963.

The residence of both parties in the Canal Zone was fully established by the pleadings and proof and was uncontradicted.

On June 17, 1964, plaintiff by her attorney, Roy Phillipps, filed a motion based upon the affidavit of the plaintiff requesting an order directing defendant to appear in this court on the 8th day of July, 1964 to show cause why he should not be held in contempt of this court for failure to make the payments required in the order for the months of March, April, May and June, 1964.

The defendant filed a motion to vacate the order entered in this court on June 14, 1963 and alleged that said order was null and void as of the 11th day of October, 1963 because the parties were divorced in Panama, Republic of Panama by the Second Circuit Judge of the Panama Circuit.

Thereafter, in support of the Motion to Vacate and attached to a Memorandum of Law, the counsel for defendant filed a copy of the record in the Court of the Second Circuit of Panama wherein it appears that by petition dated April 24, 1963 the defendant, Wayne Wendell Lucas, filed a petition as plaintiff for divorce against the plaintiff herein, Mrs. Julia Rodriguez (Lucas) under the Civil Code of Panama.

The Panama record shows that Wayne Wendell Lucas brought the action as a resident in Quarters 2721–A, Cocoli, which are in the Canal Zone and which quarters were used as the residence in the action at bar in this court but the record does not state the residence of Julia Rodriguez (Lucas) but shows that she was summoned by "public notice." The record in Panama disclosed further that defendant in that action, Mrs. Rodriguez (Lucas) was accused of having abandoned the marital abode in 1961 and having not lived with Wayne Wendell Lucas from that time on, that the defendant entered her appearance but offered no proof and the case was submitted on the proof offered by Wayne Wendell Lucas, and a divorce was granted on the abandonment charge, but no provision was made for the maintenance of Julia Lucas.

The attorney for Julia Lucas argues that his client was defrauded as the entry of judgment in Panama was secured by fraud on the part of the plaintiff but the record itself does not show that fraud was committed. It may be that the evidence submitted in the case was perjured testimony but this Court can not look behind the Panama decree into those

facts. From the Panama records filed herein, the defendant in this case, Julia Lucas, was represented by counsel and should have had an opportunity to attack the evidence against her and present her evidence relative to the cause for the divorce. No evidence was presented on her behalf, however, and the record does not disclose any reason for this failure on her part.

There appears to be only one question, therefore, in the case and that is whether or not the court of Panama can assume jurisdiction over a cause for divorce by reason of residence in the Canal Zone and thus defeat an order of the Canal Zone Court which acquired jurisdiction based upon the same residence in the Canal Zone.

The defendant in this case is a United States citizen with excellent employment in the Canal Zone as a liquid fuel gauger and the plaintiff, Julia Lucas, is a Panamanian citizen, untrained, without property or employment. While these facts may not be determinative for it is a question of jurisdiction, it is believed that this Court should do all in its power to see that justice is done and that its order entered herein, caring for the incapable and indigent plaintiff, should be enforced.

█ It is the opinion of this court that the Second Circuit Court of Panama was without jurisdiction in this case because it was based upon residence within the Canal Zone. These people had lived in the Canal Zone for many years and were proven to have been living together in House Number 2721-A, Cocoli at the time of the hearing in this court on May 7, 1963. Nothing in the record of Panama shows that there had been a change of residence that would entitle Wayne Wendell Lucas, as plaintiff in the Panama action, to the jurisdiction of the Panamanian courts but the record is clear to the effect that he lived in the Canal Zone and was employed in the Canal Zone at the time of the filing of the action in Panama and throughout the trial period which was terminated by the order of October 11, 1963.

The authority of the United States to establish courts of general jurisdiction in the Canal Zone is based upon Article III of the treaty between the United States and Panama entitled "Convention for the Construction of a Ship Canal", which was entered into between those two nations in 1903 and is of record in TS 431; 33 Stat. 2234, and is found also in the appendix of Volume 3 of the Canal Zone Code at page 428, and is as follows:

"The Republic of Panama grants to the United States all the rights, power and authority within the zone mentioned and described in Article II of this agreement and within the limits of all auxiliary lands and waters mentioned and described in said Article II which the United States would possess and exercise if it were the sovereign of the territory within which said lands and waters are located to the entire exclusion of the exercise by the Republic of Panama of any such sovereign rights, power or authority."

The language of this article is not amended or changed or abrogated by the General Treaty of Friendship and Cooperation between the two nations of 1936. TS 945; 53 Stat. 1807, Canal Zone Code appendix, Volume 3, page 524, nor by the Treaty of Mutual Understanding and Cooperation of 1955, TIAS 3297; 243 UNTS 211; 6 UST 2273 also found in the appendix of the Canal Zone Code, Volume 3, at page 565, or any other agreements entered into by the two nations, and is in full force and effect.

The Congress of the United States, acting upon this authority, established the United States District Court for the District of the Canal Zone in the Canal Zone Code, Title 3, Section 1, and in the same Code, under Title 3, Section 141, the District Court was granted jurisdiction by the Congress of all civil and criminal actions, except those within the original jurisdiction of the magistrates' courts, within the territory called the Canal Zone, which is described in the Canal Zone Code and embraced in the provisions of the Treaty.

The Congress was even more specific in establishing jurisdiction of divorces in the District Court of the Canal Zone by the adoption of 8 C.Z.Code, § 191, which is as follows:

"Jurisdiction and venue of divorce actions

"(a) The district court has jurisdiction of actions for divorce."

The language of Article III of the Treaty is clear in stating that the United States has full power to exercise sovereign rights within the territory of the Canal Zone and that these rights are to be exercised to the "entire exclusion" of the exercise by the Republic of Panama of any such sovereign rights, power or authority.

■ In the courts of the United States it has been held many times that domicile is the inherent element upon which the jurisdiction over a case in divorce must rest. Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577; Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366; Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867.

The question of the establishment of a true domicile in the Canal Zone is difficult. The Zone is under the control and authority of the U.S. Government through its created entities and people residing in it are living here at the sufference of the U. S. Government. Recognizing the domicile problem, Congress in 8 C.Z.C. § 192 overcame this weakness of our jurisdictional structure and still with the interest of the "State" in mind established a severe residential requirement for the plaintiff in that he must "actually" reside in the Canal Zone "continuously during the entire year next preceding the filing of the complaint", before being entitled to maintain a divorce action. The act itself recognizes the possible inability to establish a true domicile, in the language referring to the plaintiff's residential requirement, in saying that he must conform "although he may not have acquired a permanent domicile within the Canal Zone."

In the case at bar Wayne Wendell Lucas as plaintiff in the Panama action made no pretense of being a resident of Panama and asserted himself to be a resident of Quarters 2721–A in Cocoli, which is in the Canal Zone. This residence could be used for no other jurisdiction but that of the Canal Zone District Court for a divorce action.

As was said in Williams v. North Carolina, supra, "Divorce, like marriage, is of concern not merely to the immediate parties. It affects personal rights of the deepest significance. It also touches basic interests of society."

It is thus the United States concept that the State is very much concerned in every action of divorce for its own social policy is on trial. In fact a divorce action is not so much an action of husband and wife against each other as it is an action against the "res" or status of being married and is a proceeding in "rem".

A State where the domicile lies should not therefore be bound by an assumption of jurisdiction by another State and thus defeat the edicts and decrees of a lawfully constituted court within the domiciliary State.

This has been held by the Supreme Court in the cases above cited even though every State within the Union is bound by the firm provision called the Full Faith and Credit Clause of the Constitution, which is Article IV, Sec. 1, and is as follows:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."

The purpose of this provision is to put the Constitution behind a judgment instead of the "too fluid, ill-defined concept of comity." However, it does not mean that a State may extend its jurisdiction over and into the territory of another and require that State to recognize such judgments but simply means to regu-

late the effect of the acknowledged jurisdiction over persons and things within their territory.

It has been said that comity is "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws." 11 Am.Jur., p. 297. "In considering the questions of comity, it should always be borne in mind that the recognition of foreign laws cannot be claimed as a right, but only as a favor or courtesy." 11 Am.Jur. p. 299. "In the recognition and enforcement of foreign laws the courts are slow to overrule the positive law of the forum, and they will never give effect to a foreign law where to do so would prejudice the state's own rights or the rights of its citizens or where the enforcement of the foreign law would contravene the positive policy of the law of the forum, whether or not that policy is reflected in statutory enactment." 11 Am.Jur., pp. 300, 301.

The Full Faith and Credit Clause of the U. S. Constitution is of course not in effect between the Canal Zone and Panama but the Congress in its desire for harmony between the United States and Panama adopted an act in the Canal Zone Code which is of force and effect and much stronger than the comity that ordinarily exists between nations.

The act entitled "Effect of foreign judgment" immediately follows 5 C.Z.C. § 3197 which holds a judicial record in a court of admiralty of a foreign country to be the "same as if it were the record of a court of admiralty of the United States" and is 5 C.Z.C. §§ 3198 as follows:

"A final judgment of any other tribunal of a foreign country having jurisdiction, according to the laws of that country, to pronounce the judgment, has the same effect as in the country where rendered, and also the same effect as final judgments rendered in the Canal Zone."

At first blush it would appear from the language of the act that if the law of Panama awarded jurisdiction over the case at bar that the Canal Zone courts are bound but such an interpretation is erroneous on at least two grounds. First, such an assumption of jurisdiction would have to be a reasonable one that would fit within the general territorial limitations that ordinarily convey jurisdiction. Certainly it could not be said that the Canal Zone courts must observe a Panamanian assumption of jurisdiction over persons in a divorce case by reason of their being domiciled in California or Canada or some other area outside the limits of Panama as a nation. Secondly, such an assumption of jurisdiction must be one that Panama and her courts can legally accomplish such as one that is not in violation of an international agreement such as the treaty between the United States and Panama.

This court without question therefore not only has the right to determine whether the jurisdiction exercised by the Second Circuit Court of Panama was in accordance with the laws of Panama but also can determine if the law is a correct one and not in violation of our existing treaties.

There is no need of researching Panama laws to determine whether or not the Second Circuit Court of Panama assumed jurisdiction over the divorce case in this controversy under a law of the country of Panama for it is obvious that such a law would be in violation of the treaty.

The language contained in 5 C.Z.C. § 3198, supra, is exactly the same as in Section 1915 of the Code of Civil Procedure Annotated of California and the legislative history of the Canal Zone provisions establishes that it was taken from the said California Code.

In California, in spite of the strong language of this act, it has long been recognized that her courts could test the jurisdiction of the state or nation granting the decree of divorce and even when it did not appear on the face of the record it could be collaterally attacked. A

"foreign decree of divorce may be attacked collaterally upon showing that the court granting it had no jurisdiction because of want of domicile by the plaintiff." Stewart v. Stewart, 32 Cal.App.2d 148, 89 P.2d 404.

The judgments in cases of divorce in Mexico have frequently been up for review and under attack in the California courts and in spite of Section 1915 of C. C. P. A. of California its courts have held that assumptions of jurisdiction by the Mexican courts should not be recognized where jurisdiction was lacking for want of proper domicile by the plaintiff. See Title Ins. & Trust Co. v. California Development Co., 171 Cal. 173, 152 P. 542; Ryder v. Ryder, 2 Cal.App.2d 426, 37 P.2d 1069; People v. Harlow, 9 Cal.App.2d 643, 50 P.2d 1052; Harlan v. Harlan, 161 P.2d 490; Duquesnay v. Henderson, 24 Cal.App.2d 11, 74 P.2d 294.

It is argued that Julia Lucas, the defendant in the case in Panama, although served by publication employed an attorney who entered her appearance and that she is precluded for she had an opportunity to raise the question of jurisdiction in the Second Circuit Court of Panama which had full power to test the question. This argument is not persuasive for the record is clear that the court had full knowledge of Wayne Wendell Lucas' residence in Cocoli, Canal Zone and he did not hold out that he lived elsewhere, yet the court assumed jurisdiction. The question therefore although not raised by her, if it was not (the record does not say), was fully before the court by reason of the pleadings of Wayne Wendell Lucas.

Even in cases where the lack of jurisdiction on the part of the trial court in another State is not known without proof the weight of authority is to the effect that it is always competent to collaterally impeach a decree of divorce rendered in another state by extrinsic evidence showing that the court pronouncing it did not have jurisdiction of the parties or the subject matter. See Aldabe v. Aldabe, 209 Cal.App.2d 453, 26 Cal.Rptr.

208; Crouch v. Crouch, 28 Cal.2d 243, 169 P.2d 897. "The rule that a judgment can not be collaterally attacked for want of jurisdiction unless such want appears on the face of the record * * * does not apply to a foreign judgment." (50 C.J.S. Judgments § 893c(1) pp. 502, 503) "A recital of jurisdiction in the judgment of a court of a sister state ordinarily is not conclusive, but may be contradicted by extraneous evidence." (50 C.J.S. Judgments § 893c(2) p. 504; Hammell v. Britton, 19 Cal.2d 72, 119 P. 2d 333).

In the case at bar no "extraneous evidence" is necessary as the record itself presents the fault and furthermore the question lies between courts of separate nations where no "Full Faith and Credit Clause" exists, rather than "sister states."

In efforts to do justice and still recognize foreign judgments in divorce cases, a doctrine of "divisible divorce" has recently developed and may be applicable in cases somewhat similar to the case at bar even though such acts are done by the plaintiff that would give the courts outside the Canal Zone jurisdiction over him personally. The holding is that where a New York court had granted separation and alimony, this alimony decree survived an ex parte divorce decree obtained by the husband in Nevada, where he had then an established domicile. It was conceded that the Nevada divorce was effective to change the marital status of the parties in a manner entitled to recognition everywhere in the United States by virtue of the full faith and credit clause. See Estin v. Estin, 334 U.S. 541, 547, 68 S.Ct. 1213, 92 L. Ed. 1561; See also Scott v. Scott, 51 Cal.2d 249, 331 P.2d 641. The wife's rights to monetary payments under the New York decree continued effective, however, and were not affected by the Nevada divorce as she was not personally served and made no personal appearance in the Nevada court.

It is of course different in the case at bar as the wife, Julia Lucas, although served by publication made an entry of

appearance and had the Panama court had jurisdiction, she may have been precluded.

This Court is loath to fail to recognize the edicts and decisions of the courts of Panama for it has recognized them in the past whenever possible and the courts of the United States, of which this is one, are dedicated to the recognition of the legal principle of comity and give honor to the decisions and decrees of the judges and courts of Panama when those courts have jurisdiction even though United States nationals are involved. In this case, however, the act of the Second Circuit Court is an exercise of sovereign right in the Canal Zone which is prohibited by the Treaty and the assumption of jurisdiction by that court is illegal and without effect in the Canal Zone.

The motion of defendant, Wayne Wendell Lucas, to vacate the order of June 14, 1963 decreeing a permanent separation of the parties and awarding the plaintiff $125.00 per month and attorney's fee is denied and the case is continued to term day in August, August 5, 1964, for resetting the hearing on the order to show cause.