MATTER OF LEVINE

In Visa Petition Proceedings

A-18485936

*Decided by Board April 11, 1969*

Since beneficiary's divorce obtained in Mexico at a time when both parties thereto were permanent residents of, and domiciled in, Mexico, even though the parties to the divorce were not actually present in court but were represented by counsel, is recognized as valid under California law for the purpose of her subsequent marriage to the U.S. citizen petitioner in that State, the marriage is recognized as valid for the purpose of conferring immediate relative status on beneficiary as the spouse of the U.S. citizen petitioner.

ON BEHALF OF PETITIONER:       Donald L. Ungar, Esquire
                               Phelan, Simmons and Ungar
                               · 517 Washington Street
                               San Francisco, California 94111
                               (Brief filed)

The petitioner, a citizen of the United States, appeals from an order entered by the District Director at San Francisco, California on September 30, 1968 denying a visa petition for immediate relative status filed in behalf of his wife, Irene Elisabeth Levine, whom he married in a civil ceremony in Las Vegas, Nevada on December 28, 1965 and remarried in a religious ceremony at San Francisco, California on February 11, 1966. Exceptions have been taken to the District Director's finding that the petitioner's marriage to the beneficiary is not valid for immigration purposes because of the alleged invalidity of a divorce obtained by the beneficiary in Mexico from her former husband.

The issue presented on appeal concerns the validity of the beneficiary's divorce from her prior husband which was granted by the Juzgado De Lo Civil, Tlaxcala, Mexico, on December 18, 1965 and recorded on December 28, 1965. The applicable rule of law concerning the validity for immigration purposes of a subsequent marriage where an earlier marriage has been terminated by a divorce secured in Mexico has been stated by the Attorney

General as follows: "The validity of a marriage is governed by the law of the place of celebration." *Matter of P——*, 4 I. & N. Dec. 610 (A.G., 1952); also see *Matter of Freeman*, 11 I. & N. Dec. 482 (BIA, 1966). We conclude that the laws of California control in the instant case as the beneficiary testified that she has resided in California with her husband since February of 1966 (p. 3).

The beneficiary is a citizen of Sweden, born of Swedish parents in Paris, France, on December 10, 1930. Her first marriage to a Swedish national was terminated by a divorce obtained by her first husband in Stockholm, Sweden, on April 18, 1956. A copy of this divorce decree is in the record.

Following her divorce in Stockholm, the beneficiary traveled to Mexico City. There in 1956 she met Leo Eugene Haughey, an American citizen, who had been lawfully residing in Mexico for some time. While in the United States on a temporary visit, the beneficiary married Haughey at Concordia, Kansas, on October 22, 1957. They returned to Mexico City immediately following the wedding and lived there together until their separation in February of 1965. The beneficiary became a lawful permanent resident of Mexico soon after her marriage to Haughey.

Following her separation from Haughey, the beneficiary returned to Sweden for a visit. She left her personal belongings in Mexico City. During August 1965 while in Sweden, she decided to obtain a divorce from Haughey. She notified her lawyer in Mexico City to proceed with the filing of a divorce action, and while visiting in California in September of 1965, she signed the required documents. The divorce decree was handed down by the Civil Court of Tlaxcala, Mexico on December 18, 1965. She obtained a copy of the decree personally from her lawyer when she was in Mexico City during February of 1966 (p. 3, Statement of August 20, 1968).

In an affidavit executed on November 9, 1968, the beneficiary stated:

I did not go to Mexico personally for the divorce . . . I was advised by my lawyer in Mexico City that it was perfectly legal and proper for me to secure a divorce in this manner . . . *I certainly had no intention of evading any law of the United States or of California in securing my divorce this way.* (Emphasis added.)

The beneficiary also stated in the affidavit that she retained her lawful residence in Mexico until February of 1967, when she returned to Mexico City for her personal belongings. Her former husband also continued to reside in Mexico until the middle of 1967. The beneficiary returned to Sweden and on November 13, 1967, she had her visitor's visa revalidated by the United States

Consul (p. 3, Statement of August 20, 1968). The beneficiary last entered the United States with the petitioner on May 6, 1968, and was admitted as a visitor.

The Uniform Divorce Recognition Act,[1] enacted by the California State legislature in 1949, prohibits recognition of foreign divorce decrees where *both* parties were California domiciliaries at the time of the proceedings. It appears, therefore, that the Uniform Divorce Recognition Act is not controlling in this case since there is no showing that either of the parties to the Mexican divorce proceeding was domiciled in California at the time of the Mexican decree.

Questions concerning the recognition of foreign judgments in California are governed by section 1915, Code of Civil Procedure, California, which provides:

> Except as provided in Chapter 2 (commencing with section 1713) of Title II of Part 3 of this Code, a final judgment of any other tribunal of a foreign country having jurisdiction, according to the laws of such country, to pronounce the judgment, shall have the same effect as in the country where rendered, and also in the same effect as final judgments rendered in this state.[2]

The Supreme Court of California has stated that the application of section 1915 of the California Civil Code depends upon two conditions. The first, which is mentioned in the statute, requires a showing that the foreign court had jurisdiction under its own laws to pronounce the judgment. The second condition, which is not mentioned in the statute, would preclude recognition of the foreign judgment if the judgment is contrary to the public policy of California or violates due process limitations, *Scott* v. *Scott*, 51 Cal. 2d 249, 331 P. 2d 641, 645 (1958).

The beneficiary and her former husband were lawful residents of Mexico City at the time their divorce proceeding was commenced in Tlaxcala, Mexico. According to the record, they never appeared personally before the Tlaxcala Court. It is stated in the divorce decree that both the beneficiary and her former husband decree that both the beneficiary and her former husband were represented by counsel and that "all legal requirements had been

---

[1] Uniform Divorce Recognition Act of 1949 (chi. 1292, p. 2275, Statutes of 1949). Sec. 150.1—"A divorce obtained in another jurisdiction shall be no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceedings for the divorce were commenced." Sec. 150.2—This section provides that a presumption of domicile is raised if the party obtaining the divorce was domiciled in California within 12 months prior to the action and resumed residence within 18 months afterwards, or if a residence has been maintained during the absence.

[2] The exceptions referred to are not applicable here.

satisfied ... and in addition [they had] complied with the requisities of statutes 139 and 140 of the Code of Civil Procedure" [3] in that they had renounced the forum of their domicile. It is also stated in the divorce decree that the complainant (beneficiary) had submitted to the court Certificate No. 2153417 issued by the Federal Government of Mexico as evidence of her legal admission to Mexico and that under Article 1 of the Mexican Constitution and Statute 12 of the Civil Code of the Federal District (Mexico City), the parties are entitled to enjoy the benefits of the laws of Mexico and the State of Tlaxcala (See translation of divorce decree found in the record). We conclude on the basis of the foregoing that the Civil Court at Tlaxcala had jurisdiction under its own law to pronounce the judgment of divorce granted the beneficiary on December 18, 1965.

We next turn to a determination of whether the public policy of the State of California would preclude the recognition of the beneficiary's Mexican divorce decree. The California Supreme Court in the case of *Rediker* v. *Rediker*, 35 Cal.2d 796, 221 P.2d 1 (1950), recognized as valid a Cuban divorce decree upon a showing that the Cuban court had jurisdiction of one of the parties. Relative to the public policy of the State of California, the court said:

It can no longer be said that public policy requires nonrecognition of all irregular foreign divorces . . . We conclude that the public policy of this state requires the preservation of the second marriage and the protection of the rights of the second spouse, rather than a dubious attempt to resurrect the original marriage.[4]

The California Supreme Court in *Scott* v. *Scott* (*supra* at p. 645 of 331 P.2d) said that the question of public policy did not arise in that case because the "plaintiff was a bona fide resident of Mexico, neither party was a resident of California, and the defendant had reasonable notice." Since the record affirmatively establishes that the foreign jurisdiction (Mexico) had a legitimate interest in the marital status of both the beneficiary and her for-

---

[3] Articles 139 and 140 of the Code of Civil Procedure, State of Tlaxcala, Mexico read as follows:

Art. 139. That judge has jurisdiction to whom the litigants have submitted themselves expressly or by implication.

Art. 140. There is express submission when the interested persons renounce clearly and in a final manner the forum which the law grants them, and designate with all precision the Judge to whom they submit themselves.

[4] To the same effect is the decision of the California Supreme Court in *Dietrich* v. *Dietrich*, 41 Adv. Cal. Repts. 509, 516–571, 261 P.2d 269, 273 (1953). Also see *Watson* v. *Watson*, 39 Cal.2d 305, 307, 246 P.2d 19 (1952).

mer husband, we conclude that the divorce decree granted the beneficiary by the Civil Court of Tlaxcala, Mexico does not offend the public policy of the State of California.

Concerning the validity of Mexican divorce decrees, the Supreme Court of California has stated the general rule in *Scott* v. *Scott* (*supra* at p. 643 of 331 P.2d and cases cited) as follows:

Where a party has established a bona fide residence in Mexico and obtained a Mexican decree of divorce, such decree is entitled to full faith and credit in California.

This Board has followed a rule similar to the California rule based upon whether the foreign jurisdiction has a legitimate interest in the marital status of the parties concerned in determining whether a foreign divorce decree should be recognized for immigration purposes.[5]

We conclude that on this record, the petitioner's marriage to the beneficiary at San Francisco, California on February 11, 1966 is valid and subsisting under the laws of the State of California. The beneficiary is entitled to immediate relative status under the provisions of section 201 (b) of the Immigration and Nationality Act as the spouse of a United States citizen. An appropriate order will be entered.

**ORDER:** It is directed that the appeal be and the same is hereby sustained; the visa petition filed pursuant to section 204 (a) of the Immigration and Nationality Act is hereby approved.

---

[5] *Matter of B—*, 5 I. & N. Dec. 659 (BIA, 1954), *Matter of Freeman*, 11 I. & N. Dec. 482 (BIA, 1966), *Matter of Kurtin*, 12 I. & N. Dec. 284 (BIA, 1967).