[No. A023126. First Dist., Div. Five. June 10, 1985.]

In re the Marriage of EMMA W. and RODNEY F. STICH.
RODNEY F. STICH, Appellant, v.
EMMA W. STICH, Respondent.

**COUNSEL**

Rodney F. Stich, in pro. per., for Appellant.

Jeffrey S. Ross, Lawrence A. Gibbs and Friedman, Sloan & Ross for Respondent.

**OPINION**

**KING, J.**—In this case we hold that where the subject matter jurisdiction of a California court is challenged in a marital dissolution action based upon the existence of a prior decree of divorce issued by another jurisdiction, the validity of which is in dispute, California courts have jurisdiction to issue temporary orders pending the adjudication of the validity of the foreign

decree. The issuance of such an order is not an abuse of discretion if the court determines there is a reasonable probability of success in establishing the invalidity of the foreign decree and the proceeding has been instituted in good faith. We also hold that the appellant has appealed solely for purposes of delay and impose sanctions against him and in favor of respondent in the sum of $10,000.

Rodney F. Stich appeals from orders by the trial court that he pay temporary spousal support of $400 per month to Emma W. Stich and attorney fees of $2,500 to prosecute the action. He claims the trial court erroneously refused to recognize the validity of a 1966 Mexican dissolution proceeding and dismiss Emma's California action. Thus, he concludes the trial court lacked subject matter jurisdiction to make any order except one dismissing the action. His claims are absolutely without merit.

## I. Facts

Emma and Rodney were married September 5, 1943, in Texas. They had four children, now adults. From 1950 until 1962, the Stiches lived in California where they acquired a substantial amount of real property. In 1962, they moved to Colorado. In 1964 or 1965, the Stiches separated and Rodney moved to Oklahoma.

Rodney states that in 1964 and 1965, he visited Mexico and came to the decision to "establish a permanent residence there." He rented an apartment in Juarez, Mexico in December 1965 and promptly hired an attorney and filed for a divorce.

Emma states that she received the divorce papers by mail in Texas. Included was a power of attorney form. Rodney reportedly called Emma's sister and asked her to pressure Emma to sign the papers. Because she was distraught and under pressure from Rodney through her sister, Emma signed the papers. The Mexican court issued the divorce decree on January 31, 1966, no more than 60 days after Rodney rented the apartment in Mexico.

Rodney did not rent or otherwise relinquish his residence in Oklahoma during his sojourn in Mexico. Additionally, he did not obtain a job while in Mexico. He returned to Oklahoma in February 1966, immediately after he obtained the divorce. The divorce judgment stated there was no community property, and made no provision for spousal or child support. Rodney has lived in California from 1967 through the present.

Rodney sent Emma $300 a month from early 1966 until 1982. When he discovered that she had contacted a lawyer regarding the status of their

marriage, he sent her a letter threatening that unless she cancelled the action for dissolution, he would never again make any payment to her, would stop paying her health insurance, and would remove her from his will. He stopped the payments as threatened.

## II. Trial Court Proceedings

In December 1982, Emma filed a petition for dissolution of marriage in California requesting spousal support and a determination of property rights. She also set a hearing on her request for temporary spousal support and attorney fees.

A few days prior to the hearing Rodney filed a motion to quash service on the ground a valid Mexican divorce decree had previously been entered and therefore no marriage existed. The hearing was held on Emma's request for temporary spousal support and attorney fees, and the court took under submission Rodney's motion to quash, while allowing both parties further briefing on that issue.

On May 10, 1983, after argument and briefing by the parties the court deferred action on the motion to quash until a trial could be conducted on the issue of the validity of the Mexican divorce, and granted Emma's motion for temporary spousal support and attorney fees. The court declared: "It appears that the primary question before the Court is whether or not there is a sufficient showing that [Emma] might prevail in her challenge to the Mexican dissolution obtained by [Rodney] some 17 years ago. The challenge is based upon lack of jurisdiction of that Court, which in turn, is based upon lack of domicile of one or both parties in that jurisdiction. There is a sufficient showing when the evidence and law indicate a fair or reasonable probability of success at the trial. If that showing is made, temporary support and fees can be awarded. [¶] After a careful review of the evidence and law the Court is convinced that the test has been met. [Rodney] obviously went to Mexico for the dissolution. He barely met the time requirements and returned to the United States immediately upon receipt of his decree. [Emma's] appearance was by power of attorney." The court rejected Rodney's arguments that Emma was barred by equitable theories from challenging the validity of the divorce by stating, "The equitable position of the parties then and thereafter cast doubt upon the theory of estoppel." Rodney appealed and posted an appeal bond. Consequently, Emma has never received the temporary support or attorney fees ordered. Thereafter, Emma sought and received an order for attorney fees pending appeal. Rodney filed an undertaking to stay that order as well.

### III. Jurisdiction to Issue Pendente Lite Order

The central issue on appeal is whether the trial court exceeded its jurisdiction in awarding temporary spousal support and attorney fees.[1] Rodney contends the trial court had no jurisdiction to make any order because of the Mexican divorce. Emma contends the trial court had jurisdiction to make temporary orders until a determination of the validity of the Mexican divorce can be made.

Civil Code sections 4357 and 4370 allow the trial court to award temporary spousal support and attorney fees as necessary during the pendency of certain family law proceedings.[2] Thus, an award of temporary spousal support is within the sole discretion of the trial court. (*Machado* v. *Machado* (1962) 201 Cal.App.2d 154, 156 [20 Cal.Rptr. 161].) Similarly, the award of attorney fees, upon a showing of need and an ability to pay, is within the discretion of the trial court. Neither award will be disturbed on appeal absent a showing of abuse of discretion. (*In re Marriage of Jacobs* (1982) 128 Cal.App.3d 273, 288-289 [180 Cal.Rptr. 234]; *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 465-466 [152 Cal.Rptr. 668], disapproved on other grounds by *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].)

Additionally, for either award to be upheld, there must be sufficient evidence of the existence of a marriage. (*Gromeeko* v. *Gromeeko* (1952) 110 Cal.App.2d 117, 123 [242 P.2d 41].) While the *Gromeeko* court declined to state a precise standard for the amount of proof of the existence of a marriage required to justify the award of temporary spousal support and attorney fees, the court concluded, "It is clear that the evidence need not be as complete and satisfactory as at the time of trial. When, as here, a valid marriage is admitted and the issue is the validity of a foreign divorce decree, it appears that the trial court has a larger measure of discretion to grant the application than when the fact of the marriage itself is in issue."

---

[1] In Rodney's closing brief, filed in propria persona, he attempts to raise a number of additional issues on appeal. Some of these issues may not be properly considered on this appeal by this court because they relate to Rodney's federal court action or are based on orders from which no appeal has been taken.

[2] Civil Code section 4357 provides in part, "During the pendency of any proceeding . . . [for dissolution of marriage] the superior court may order the husband or wife . . . to pay any amount that is necessary for the support and maintenance of the wife or husband . . . ."

Civil Code section 4370, subdivision (a), provides in part: "During the pendency of any proceeding under this part, the court may order any party . . . to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees; and from time to time and before entry of judgment, the court may augment or modify the original award for costs and attorneys' fees as may be reasonably necessary for the prosecution or defense of the proceeding or any proceeding related thereto, including after any appeal has been concluded."

(*Id.*, at p. 127; see also *Dietrich* v. *Dietrich* (1953) 41 Cal.2d 497, 504 [261 P.2d 269], cert. den. (1954) 346 U.S. 938 [98 L.Ed. 426, 74 S.Ct. 378].) ■ However, even if the Mexican divorce is ultimately found to be valid, Emma could be awarded attorney fees necessary to allow her to pursue an action for support and division of community property, issues not adjudicated in the Mexican proceeding. (*In re Marriage of Leff* (1972) 25 Cal.App.3d 630, 647-648 [102 Cal.Rptr. 195].)

■ Here, as in *Gromeeko* and *Dietrich,* a valid marriage is admitted; the issue is the validity of a foreign divorce decree. The trial court made a factual finding that Emma had demonstrated a fair or reasonable probability that she would be successful in establishing the invalidity of the Mexican divorce. ■ We cannot disturb this finding since it is clearly supported by substantial evidence. (*Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 813, 660 P.2d 813]; *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

■ The evidence includes several possible grounds for successful challenge of the validity of the divorce. Rodney acknowledges that Emma's "appearance" in the Mexican proceedings was by power of attorney. She claims that she signed "divorce papers" under pressure and at a time when she was distraught. This raises the possibility of undue influence or duress and brings into question the validity of the Mexican court's jurisdiction over her.

Rodney also contends that prior to the divorce Emma voluntarily executed quitclaims in favor of him on numerous parcels of real property. She states that she does not remember signing any deeds, or even knowing what a "quitclaim" was. This suggests that an issue at trial will be whether the deeds were obtained during the marriage by fraud or undue influence. (*Boeseke* v. *Boeseke* (1967) 255 Cal.App.2d 848, 852 [63 Cal.Rptr. 651]; Civ. Code, §§ 158 (repealed, now § 5103), 2228, 2235.)[3]

Rodney admitted he rented an apartment in Mexico no more than two months before the Mexican court issued the divorce decree, and that he moved back to his Oklahoma residence the month after. At the time of the Mexican proceedings he held substantial real property in California. In spite

---

[3]Civil Code section 158 (repealed by statute in 1969) states: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; *subject, in transactions between themselves, to the general rules which control the actions of persons occupying the confidential relations with each other, as defined by the Title on Trusts.*" (Italics added.)

New Civil Code section 5103 does not significantly alter the language of the last half of old section 158.

of these holdings, however, the Mexican decree stated there was no community property and made no provision for child or spousal support. Public policy may not permit recognition of a foreign divorce decree if the divorce was obtained in a foreign country in order to evade the laws of this state. (*Scott* v. *Scott* (1958) 51 Cal.2d 249, 256 [331 P.2d 641].) Thus, there is substantial evidence to support the trial court's finding that it was reasonably probable that Emma would succeed in challenging the validity of the Mexican divorce at trial.

■ Rodney also asserts that the trial court lacked jurisdiction to award temporary support and attorney fees, because of its failure to hear argument and evidence on the motion to quash during the hearing on support and fees. This is not true. A trial court may properly limit the testimony and argument to the issues of temporary spousal support and attorney fees, and reserve the taking of evidence on one issue about which there is substantial factual dispute, such as the validity of a Mexican divorce, until a trial of that issue can be conducted. Additionally, Rodney served Emma's counsel with his motion to quash only a few days prior to the hearing already scheduled on the order to show cause for attorney fees and temporary spousal support. The trial court noted that Emma's counsel had not had sufficient time to respond to the motion to quash. Also, Emma had come from Texas for the purpose of testifying on the issue of support and fees, and it would have been a considerable hardship on her to continue the order to show cause and require her to return again, after the continuance, to testify on those same issues. Thus, in order to allow Emma to return to Texas after the hearing and to give Emma's counsel sufficient time to respond to Rodney's arguments, the court decided to take the motion to quash under submission, and receive further briefing from the parties.

Thereafter, the trial court determined it could not rule on the motion to quash without holding an evidentiary hearing. Contrary to Rodney's assertions the trial court did *not* imply that it would reach a decision on the jurisdiction question only after a trial of the entire case. The question of jurisdiction in this case involves significant factual questions requiring a lengthy evidentiary hearing. Due to this it is reasonable to conclude that resolution of the issue would not be appropriate on a busy domestic relations motion calendar. An early bifurcated trial would be the appropriate way to resolve this issue first, while providing a complete opportunity for each side to fully present its evidence and arguments. In fact, on a later appearance, after Rodney had made one of his numerous changes of attorneys and was again representing himself, he stated to the court that he was going to file a motion to bifurcate and separately try the issue of the validity of the

Mexican divorce.[4] He never did. If he had done so, and had successfully established the validity of the Mexican divorce, his obligation to pay temporary support would have been limited to no more than a couple of months. Instead, because of his repeated motions before the trial court and his appeal, he now owes support which has accrued over the past two and a half years.

Rodney's claim that he has suffered "great irreparable harm," which can never be compensated by any subsequent acts of the court, is completely without merit. He paid Emma monthly support from 1966 until October 1982 in the absence of any court order. He has ceased to do so. He posted appeal bonds to stay execution of the order of the trial court for temporary support and fees and for attorney fees on appeal. The record does demonstrate irreparable harm. However, as we shall discuss in our imposition of sanctions against Rodney, the irreparable harm has been done to Emma, her attorneys, and to the legal system which Rodney has taken every opportunity to manipulate for harrassment and delay.

■■■ Emma has met all other requirements for an award of temporary spousal support and attorney fees. She demonstrated her need and Rodney's ability to pay. Her total income in early 1983 was $263 per month, and her total expenses were $892 per month. ■■ ■■ ■■ ■■ At the time of the hearing Rodney admitted to owning property worth at least $5 million upon which no more than $1.5 million was owed.[5]

■■■ Based upon these facts the court reasonably concluded that Emma needed temporary spousal support, and that Rodney was able to pay it, *as he had for the 17 years prior to October 1982,* and attorney fees.

It was clearly within the discretion of the trial court to award temporary support and attorney fees, and Rodney has failed to show any abuse of discretion.

---

[4]"THE COURT: . . . I would suggest to you, Mr. Stitch, that you pursue the trial [on the issue of the validity of the Mexican divorce] as diligently as you possibly can; because if you are there successful [*sic*], you will have thereby minimized your exposure to interim support. [¶] MR. STITCH: Well, I intend to file a motion for bifurcation shortly . . . ."

[5]Rodney claimed that in spite of the value of his property he could not afford to pay either temporary support or attorney fees. As evidence of this he supplied a profit/loss statement prepared by himself, *not* by an accountant, which showed that he had a $117,292 per year "negative cash flow." Even if the information contained in the profit/loss statement was correct, "a past or present cash deficit does not control on the question of ability to pay . . . [¶] . . . If necessary the husband must invade his investments to provide the wife with the sinews to conduct her litigation with him." (*Rosenthal* v. *Rosenthal* (1961) 197 Cal.App.2d 289, 297-298 [17 Cal.Rptr. 186].)

## IV. Imposition of Sanctions

Upon an examination of the record, including taking judicial notice of federal court proceedings, we issued, on our own motion, an order to Rodney to show cause why sanctions should not be imposed against him for pursuing a frivolous appeal, or one for the purpose of delay. Rodney appeared and argued against the imposition of sanctions.

We previously made mention of Rodney's letter to Emma threatening to never make any further payments to her unless she cancelled the dissolution action. It is clear to us that Rodney has manipulated the judicial system, including its appellate process, to carry out this threat. Emma's order to show cause was filed in December 1982. To this date, by virtue of undertakings filed by Rodney, Emma has received no spousal support. For the same reason she has received no payment of attorney fees with which to prosecute the action in the trial court or to defend against the appeal. The record shows her only income at the time of the order to show cause was $263 per month and her counsel informs us she has since been relegated to taking in laundry to supplement her income.

A review of Rodney's actions shows that he has literally and figuratively attempted to "make a federal case" out of this dissolution action. Further, he has apparently adopted as his legal maxim in this case a famed stateman's ringing pronouncement, "Millions for defense, but not one cent for tribute." In December 1983 Rodney was first served with the petition for dissolution and the order to show cause, and he employed a lawyer to file responsive pleadings. This was the first of four lawyers he has had in these proceedings, all of whom he has terminated after relatively brief representation.

Before the originally scheduled hearing on the order to show cause had taken place, Rodney terminated his first lawyer. He employed a second attorney who promptly obtained a continuance of the order to show cause and filed a battery of declarations and motions with the court in addition to the motion to quash, including a demurrer to the petition for dissolution, a pleading which is not authorized under the Family Law Act. After the order to show cause hearing, but prior to receipt of the ruling thereon, Rodney promptly terminated his second lawyer and hired a third lawyer who also filed additional declarations and motions which Emma's counsel had to answer. After the trial court issued the order resulting from the order to show cause hearing which is the subject of this appeal, Rodney immediately terminated his third lawyer.

Having gone through three lawyers faster than a famous major league baseball owner goes through managers, Rodney apparently concluded there

was only one person capable enough to represent him—himself. Rodney then filed a battery of new motions in propria persona including a "motion for new trial" on the pendente lite order for temporary support and attorney fees, and a request for a statement of decision thereon pursuant to Code of Civil Procedure section 632. ▮▮▮ Both requests for a statement of decision and motions for a new trial are appropriate only after the determination of a factual issue. (See Code Civ. Proc., §§ 632, 656.) In this case, despite Rodney's attempt to posture his motions as an attack on the factual determinations leading to the award of temporary support and attorney fees, a reading of his documents makes it clear they are based solely on an issue of law, his ongoing contention that the trial court lacked jurisdiction to make any order because of the existence of the Mexican divorce. Certainly the decision of the trial court to defer ruling on the validity of the Mexican divorce until an evidentiary hearing could take place was correct, given the irreconcilable factual conflicts in the declarations submitted in support of and in opposition to Rodney's motion to quash. A decision to defer a determination on an issue pending an evidentiary hearing cannot in any sense be considered to constitute a trial on the issue so as to justify a request for a statement of decision or the filing of a motion for a new trial.[6]

When Rodney's requests were properly denied, being unable to fire his lawyer, he did the next best thing; he attempted to fire the judge. He immediately moved under Code of Civil Procedure section 170.6 to disqualify the judge who had conducted all of the proceedings to date. Although this motion was filed too late, the trial judge agreed to recuse himself from this case, undoubtedly realizing his time could be more productively spent on other cases. Rodney thereafter filed a motion for reconsideration of his previous motions. These were denied by a different judge, who advised Rodney that his motions bordered on the frivolous. Rodney, who one might suspect had already terminated lawyers who dared to charge him for such advice, would not accept it gratuitously. He again, too late, moved to disqualify that judge. The second judge, undoubtedly aware of what his colleague had gone through over the previous seven months, also agreed to recuse himself.

Rodney, contrary to his previously expressed intention to file a motion for bifurcation to try the issue of the validity of the Mexican decree at an

---

[6]The answer to Rodney's claim of entitlement to a statement of decision is that even if he were entitled to request one, his request was untimely. The hearing involved less than one day. Thus, pursuant to Code of Civil Procedure section 632, a request for a statement of decision had to be made before the court took the matter under submission at the conclusion of the hearing. Rodney's request was not made until several days later. Similarly, the short answer demonstrating the inappropriateness of his filing of a motion for a new trial is that, "A new trial is a re-examination of an issue of fact in the same court after a trial . . . ." (Code Civ. Proc., § 656.) Here, there had not yet been a trial on the issue of the validity of the Mexican divorce.

early trial, and having run out of lawyers and trial judges to terminate, turned his attention to the appellate courts. Still representing himself, he filed a petition for a writ seeking to overturn the pendente lite order. The writ was summarily denied by this court and his petition to the Supreme Court for a hearing on the writ was also denied.

Thereafter, Rodney filed a notice of appeal in propria persona. In fact, apparently not wanting to leave any stone unturned in getting to the appellate court, he filed two notices of appeal from the pendente lite order. In addition, he filed another petition for a writ which was denied; his petition to the Supreme Court for a hearing on this writ resulted in that court's unanimous denial of a hearing.

Having become disenchanted with the state courts, Rodney did in fact attempt to "make a federal case" out of this dissolution action. He filed a civil rights action in the United States District Court for the Eastern District of California suing Emma, the Superior Court of Solano County, and the two trial judges of that court who had conducted hearings and ultimately recused themselves. Within six months, Rodney reluctantly redirected his attention to the California appellate courts when his federal court action was dismissed on the grounds that his complaint was wholly insubstantial and frivolous.[7]

Code of Civil Procedure section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the cost on appeal such damages as may be just." A similar provision appears in California Rules of Court, rule 26(a). Although it seems clear to us that Rodney's appeal is just as frivolous as his federal court action was, we find it unnecessary to make that determination since we hold that sanctions should be imposed upon him on the basis of pursuing an appeal solely for the purpose of delay. Every action taken by him has been to delay as long as possible any requirement that he make any payment to Emma for her support or for attorney fees to prosecute this action. (See *Hersch* v. *Citizens Savings & Loan Assn.* (1983) 146 Cal.App.3d 1002, 1012 [194 Cal.Rptr. 628]; *Comora* v. *Comprehensive Care Corp.* (1983) 140 Cal.App.3d 369, 377 [189 Cal.Rptr. 538]; *People* v. *Beverly Bail Bonds* (1982) 134 Cal.App.3d 906, 914 [185 Cal.Rptr. 36].) His motive

---

[7]Rodney employed a fourth attorney to draft and submit his appellant's opening brief in this appeal. The record does not disclose when Rodney terminated his fourth attorney, however, he filed his own appellant's reply brief in propria persona less than four months after the filing of appellant's opening brief by his counsel. At oral argument on the order to show cause regarding sanctions Rodney informed us that each of his attorneys had been terminated because they were inept and incompetent. Except for their judgment in accepting Rodney as a client in the first place, we have seen nothing to cause us to accept Rodney's assessment.

clearly is to carry out his original threat never to pay Emma anything if she proceeded with the dissolution action, or, alternatively, to financially coerce a settlement of her claim. We can't help but express admiration for the staying power of Emma's attorneys, who inform us that over 250 hours of attorney time has been expended in state court proceedings. This may well be a conservative estimate. However, unlike Rodney's attorneys and the trial judges, Rodney could not fire or disqualify them.

Rodney's claim of the validity of the Mexican divorce, as he acknowledged to the trial court, could have been quickly resolved in a bifurcated trial of that issue if he were truly interested in obtaining a rapid disposition. The protracted length of this litigation, the effect that it has had on Emma including the extremely high legal costs she has been required to incur, as well as the undue burden it has imposed on the legal system by the undue consumption of valuable judicial time, when considered with the need to deter this kind of conduct in the future, all justify the imposition of a substantial sanction as a penalty against Rodney. (See *Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997 [205 Cal.Rptr. 532], cert. den. (1985) — U.S. — [84 L.Ed.2d 820, 105 S.Ct. 1758].)

 In considering the appropriate amount of the sanction to be imposed, we have duly considered the fact that Emma, as a result of our affirmance of the lower court's order in this appeal, will be entitled to request attorney fees and costs upon the return of this case to the trial court. Additionally, she will be entitled to collect the support accrued under the pendente lite order, with interest to date. We have also duly considered the fact that Rodney acknowledged at the order to show cause hearing that he had a net worth of at least $3½ million. Considering these factors, we find that $10,000 is an appropriate amount to impose as a sanction against Rodney for his egregious conduct herein.

The orders of the trial court are affirmed. In addition, sanctions are imposed against Rodney for pursuing an appeal for the purpose of delay in the amount of $10,000 to be paid to Emma. Rodney shall also bear the costs of appeal, including attorney fees, to be determined by the trial court.

Low, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 28, 1985.