Filed 5/21/14  Osterland v. Bridge CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARYL-LYNN OSTERLAND,<br><br>    Respondent,<br><br>        v.<br><br>MICHAEL BRIDGE,<br><br>    Appellant. | F066333<br><br>(Super. Ct. No. 04FL0498)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Kings County.  Robert S. Burns, Judge.

Simoes Law Office, Joseph M. Simoes; Michael Bridge, in pro. per., for Appellant.

Tritt & Tritt and James F. Tritt for Respondent.

-ooOoo-

Michael Bridge appeals from family court orders which denied his request to change custody of his eight-year-old son, modified the visitation schedule between himself and his former wife, Charyl-Lynn Osterland, and denied his request to appoint a psychological expert pursuant to Evidence Code section 730.  Bridge argues the court abused its discretion in issuing these orders.  We disagree and affirm them.  Osterland has

filed a motion in this court asking us to impose sanctions for a frivolous appeal. For reasons we shall explain, this motion is denied.

## FACTUAL AND PROCEDURAL SUMMARY

The parties were married in April 2002 and separated in June 2006. They have one child, Christian, born in 2004. Judgment of dissolution of marriage was filed in May 2008, which included a marital settlement agreement providing for joint physical custody and visitation on an alternating schedule.

In September 2009, when Christian reached school age, the parties stipulated to a new custody and visitation schedule. The parties continued to share joint legal and physical custody. Visitation was modified so that Christian would live with Osterland from 6 p.m. Sunday through 6 p.m. Friday, and with Bridge from 6:00 p.m. Friday through 6:00 p.m. Sunday. To make up for lost visitation with Bridge, Christian would reside with Bridge during additional three-day holidays and summer vacation as agreed between the parties.

In June 2010, Osterland filed an order to show cause (OSC) and affidavit for contempt, in which she alleged that Bridge had taken custody of Christian once summer vacation began and refused to return him to her for regularly scheduled visits. An informal mediation was held, after which the court adopted the mediator's recommendations for summer visitation. The court scheduled a formal mediation to address issues of visitation for future summers.

At an August 17, 2010 hearing after the formal mediation, the court set a contested evidentiary hearing for November 2010 and ordered the parties to continue to share joint legal and physical custody, with Osterland having primary physical custody, pending that hearing. Bridge was given visitation on the first, third, fourth and fifth weekends of each month from 6:00 p.m. Friday to 6:00 p.m. Sunday. The order stated that "Joint Legal Custody implies that the parties shall consult and cooperate with each other on substantial questions relating to religious upbringing, education programs, significant changes in

2.

social environment, and health care of the child." The court also ordered the parties to commence therapy for Christian at the Sullivan Center.

The next month, Bridge filed a motion to modify the August 17, 2010 custody and visitation order to give him custody on alternate weeks, as he had relocated and now lived in the same town as Osterland. Bridge also asked the court to vacate the order to participate in therapy at the Sullivan Center and order counseling at a less expensive provider, or delete the counseling requirement entirely. In response, Osterland filed a motion requesting she be allowed to obtain treatment for Christian at the Sullivan Center without the need for Bridge's consent. On November 8, 2010, Osterland filed an OSC for contempt against Bridge, alleging he violated the court's August 17, 2010 order when he failed to return Christian to her on October 17, 2010.

At a November 9, 2010 hearing, the court continued its current custody and visitation orders, ordered the parties to attend mediation on December 1, 2010, and vacated the evidentiary hearing set for November 18. The court set the arraignments on both the June 21, 2010 and November 8, 2010 OSCs for contempt for December 20, 2010. The court further ordered that Christian receive services through the Sullivan Center, that Bridge contact the center to complete the intake process, and each parent pay for the therapy sessions in which he or she participates.

On November 23, 2010, Bridge filed a declaration explaining that at the last mediation "it was offered that the parties share week to week visitation," but he turned the offer down because he was living in Fresno and did not want to subject Christian to long car rides from Lemoore to Fresno during his week. He started having "second thoughts" about this and relocated to Hanford so they could "try the week on week off visitation." Osterland filed a responsive declaration objecting to Bridge's requests, asserting it was in Christian's best interest to live primarily with her during the school year.

3.

At the December 20, 2010 hearing, the court ordered the parties have joint legal custody of Christian, with Osterland having primary physical custody. The court adopted the mediator's December 17, 2010 report and recommendation, and ordered visits for Bridge on the first, third, fourth and fifth weekends of each month, from 6:00 p.m. Friday until the return to school Monday morning; if Bridge was unable to return Christian to school, he was to return Christian to Osterland at 6:00 p.m. on Sunday. The court adopted specific holiday and vacation schedules. The court continued the contempt hearing on Osterland's OSCs. In March 2011, the court granted Osterland's request to dismiss the two OSCs without prejudice.

On January 27, 2011, Bridge filed a motion to modify the December 20, 2010 order, in which he asked that visitation be modified to week-to-week visits and the court ban the use of corporal punishment. Bridge asserted the modification was in Christian's best interest and complained that Osterland was purposefully delaying having Christian assessed for ADHD to prevent Bridge from receiving every-other-week visits. Bridge further claimed that Christian told him Osterland spanked him and Bridge was concerned she was using corporal punishment.

Osterland did not consent to Bridge's requested modification. In her responsive declaration, Osterland claimed that while Bridge appeared to believe that the August 2010 mediation provided that they would share custody of Christian on an alternating weekly basis if he was living in Hanford, this was not discussed in mediation and was simply Bridge's interpretation of what he believed transpired. She also pointed out that there were no court orders or findings in December 2010 that indicated there would be change of visitation after Christian was evaluated for ADHD.

On April 15, 2011, Bridge filed a request that Osterland be required to use Christian's legal name on all documents and registrations, and that she refrain from using any other name for him, and he be awarded fees and costs incurred in defending against the contempt charges that were dropped. Bridge claimed that Osterland enrolled

4.

Christian in preschool and karate using middle or last names that were not on his birth certificate. Bridge also filed a motion to compel Osterland to testify as to the proof and validity of statements she made about Bridge in her November 2010 responsive declaration.

At the April 18, 2011 hearing, the court found there was no change in circumstance to warrant modification of custody or visitation, and denied Bridge's request. The formal written order of that hearing, filed on May 17, 2011, continued the December 20, 2010 custody and visitation orders without change: the parties share joint legal custody, Osterland has primary physical custody, and Bridge has visits on the first, third, fourth and fifth weekends of each month from 6:00 p.m. Friday until the return to school on Monday.

Between December 29, 2010 and April 19, 2011, Bridge filed four OSCs for contempt against Osterland, alleging she violated court orders by (1) taking Christian for therapy in the fall of 2008 without informing him, (2) interfering with his right to have telephone conversations with Christian, (3) filing contempt charges against him, and (4) having the Sullivan Center start ADHD testing before it was court ordered. In May 2011, the court granted Bridge's request to dismiss the four counts of contempt with prejudice.

On June 7, 2011, Bridge filed a declaration in which he stated that the parties had lost sight of the real issues in the case, namely the well-being of their son, and he asked the court to dismiss any contempt charges he had against Osterland. That same day, Bridge also filed a motion to modify visitation. At the June 27, 2011 hearing, the court continued the hearing on the motion for fees and costs, and use of Christian's legal name, to July 12. Osterland submitted a responsive declaration, in which she pointed out that Bridge was requesting the same relief the court denied on April 18, 2011; that this was the fifth motion Bridge had filed since September 22, 2010; and he had filed four OSCs on contempt since December 29, 2010. Osterland further explained that she had

5.

Christian baptized at her church in May 2011 after he asked to be baptized, but she did not invite Bridge to the baptism because she thought it unlikely he would come. However, she did give him a copy of the baptismal certificate. She apologized for not inviting Bridge and admitted that she should have invited him.

At the July 12, 2011 hearing, the court denied Bridge's June 7, 2011 request for modification of visitation, his request to attend mediation, and his request for an alternating weekly visitation schedule. The court also denied Bridge's requests for attorney fees and for use of Christian's legal name set forth in the motion filed on April 15, 2011.

On January 26, 2012, Bridge filed an OSC for contempt against Osterland, alleging that she violated court orders when she had Christian baptized without consulting him and enrolled Christian into swimming during his visitation times without consulting him.[1] At the May 2 contempt trial, Osterland admitted she violated a court order when she had Christian baptized without notifying Bridge. After hearing argument of counsel on the second contempt issue regarding swimming, the court found insufficient evidence to support the charge. As to Osterland's sentence on the first count, the court ordered her to pay $750 to Bridge's attorney for his fees; the court noted that in effect, the sentence was the finding of contempt and the relevance to future custody and visitation issues with regard to parenting. The court explained the contempt finding was a fact that would be considered in the future depending on what occurs; the weight it would be given depended on the issues that might come up between the parties.[2]

---

[1] Unless otherwise stated, all references to remaining dates are to the year 2012.

[2] The minute order states: "Court order that this finding of contempt can be used against petitioner (mother) in any future proceedings regarding other issues of custody and visitation."

6.

On July 12, Bridge filed another request to modify the May 17, 2011 order on custody and visitation. Specifically, he asked that the custody and visitation order be modified to reverse the custodial schedules, and that additional terms, such as telephone calls, be ordered. He also asked the court to appoint an "Evidence Code Section 730 expert to prepare a custodial evaluation … to address long-standing parenting issues and disagreements between parties regarding their son's upbringing, continued unilateral custodial decisions by mother, and that also evaluates the benefit to the child in changing schools, in addition to other areas or issues that the expert might determine necessary." Bridge also asked that he be allowed to change Christian's school and that Osterland pay his attorney fees and costs.

In his declaration in support of his requests, Bridge set out a litany of complaints about prior custody rulings and orders dating back to September 2009. He stated he agreed to weekend visitation in September 2009 because he was living in Fresno, not Hanford where Christian's school was, and he believed he would receive an "equal timeshare" if Christian spent entire summers and three-day holidays with him. He never agreed to reduce his time with Christian "from anything but equal." Bridge claimed Osterland filed the contempt actions, which "falsely accused" him of violating their stipulated orders, only to support her modification request; she could never prove the allegations; and she dismissed them after "it had served to get her back into mediation."

Bridge alleged the changed circumstances justifying modification of custody consisted of Osterland's contempt conviction, which raised "clear questions about her ability to act in our child's best interests as a primary caretaker[,]" as well as her credibility. He asserted that Osterland engaged in a "pattern of lies … designed to gain sympathy for her position, to malign my character to this court, and alienate parents and teachers at our son's school and which has created a bias against me that affects our son's best interests." According to Bridge, Osterland had a pattern of creating scenes in front of other parents and teachers that painted him in a negative light, such as when Osterland

7.

became very angry with him in front of other church members during a vacation Bible school session in June. He also claimed Osterland would create situations to make him look like the "bad guy" to try to alienate Christian.

In Osterland's responsive declaration, filed August 1, she addressed the allegedly changed circumstance of her contempt conviction, pointing out that the court was aware of the facts behind Christian's baptism when it denied Bridge's modification request on July 12, 2011, as it had before it her June 27, 2011 declaration in which she admitted Christian was baptized and she was wrong for not inviting Bridge to participate. She claimed she never treated Bridge differently than any other parent during functions and activities. She believed Bridge wanted to change Christian's school because of his personal feelings towards the teachers and stated that Christian had a very successful school year. Osterland asked the court to deny Bridge's request for a custodial evaluation.

At an August 7 hearing, the court denied Bridge's request to appoint an expert pursuant to Evidence Code section 730, as it did not see a need to do so. The court told Bridge's counsel he was free to hire and pay for an expert if he wanted one "for [his] purposes." The court stated it could set the hearing out for the custody and visitation recommending counselors to prepare a report and recommendation, which would be beneficial to the court. Bridge's counsel stated that Bridge was willing to pay for the custodial evaluation and asked that the court appoint someone so the court could use the information for custodial purposes. The court responded that he was free to hire an expert, get a report prepared, and submit it, but the court did not need to appoint anyone. The court denied Bridge's counsel's request to issue an order requiring Osterland to participate and cooperate in any evaluation. The court agreed to continue the hearing, however, so Bridge could submit additional paperwork and the matter could be referred to the custody and visitation recommendation counselor.

At the hearing, Bridge's counsel further asserted as changed circumstances Bridge's belief that Osterland was going to move and that standardized tests show that Christian was struggling in school despite receiving "solid report cards." When Bridge's counsel again raised the issue of appointing an expert, the court explained that it was "not ordering the appointment of an expert under 730," as it did not see that it was beneficial to the court and it did not need one, but if Bridge wanted to hire an expert, he could expend his funds and hire one.

The court did not see any changed circumstances that would warrant modifying the orders, but sent the matter out for a custody visitation recommendation counselor report and continued the hearing to September 27. The court also set that date as a hearing on Osterland's request for attorney fees on a deposition of Osterland that Bridge had scheduled for August 21. Mediation was set for September 10.

A hearing was held on August 30 on a request by Osterland for an OSC for modification of child custody and visitation.[3] The court was inclined not to take up the request that day, with the exception of one modification, and instead take the matter up on September 27. The court noted the changed circumstances Bridge raised at the August 7 hearing were that Osterland engaged in "unilateral parenting" in May and Christian was suffering academically, and stated Bridge needed to be aware that the court would be considering the parties' conduct "from the time that that request was filed up until the time that I make a decision on those issues at that September 27th hearing. And that at that August 7th hearing I was crystal clear, I made it abundantly clear that I did not see a need for an expert on the custody visitation under 730." The court explained that it did not see an expert as being fruitful and appointing one would be a waste of time based on the issues raised, but it had told Bridge he was free to hire one.

---

[3] Osterland's OSC papers are not included in the appellate record.

9.

The court believed the issue was settled after it denied Bridge's request to order Osterland to participate in that process, as there was no reason to hire an expert. However, based on the information provided to the court, Bridge, on multiple occasions, had "unilaterally removed the academically-struggling minor from school for mental health appointments in another county without consulting Miss Osterland and for reasons of very limited relevancy and efficiency, which, or course, is conduct undermining the very claims that he's brought forth as causing the changed circumstances requiring the Court to change the orders that are already in place." The court found even "more fundamental" that Bridge engaged in this conduct during Osterland's custody period, as Christian missed the entire school day for these appointments, which required Osterland to help Christian make up the missed classwork, and given its clearly expressed order regarding the expert, it appeared to the court that Bridge's "true intentions" were to interfere with Osterland's custody period. The court ordered Bridge to return Christian to Osterland on Sunday evenings at 6:00 p.m. following Bridge's weekends, and again stated that if Bridge wanted to take Christian to see an expert during his custodial period, he was free to do so, but he could not do on Osterland's time.

After issuing this order, the court stated that "it would be relevant for the Child Recommending Counselors to have some insight into the August 7th proceedings and certainly my view of the conduct between then and now, so I'm going to order a transcript of today's hearing be made or expedited, and that it be provided to them so that they have it in their possession by the September 10th meeting with the parties so they can consider that when they're making their recommendation."

Bridge filed a supplemental declaration on September 5 in which he stated that Osterland was capable of fabricating problems and allegations to serve her own ends, and he was providing a "timeline of the various false allegations" Osterland had made against him since the beginning of the case in support of his contention that she is capable of, and has perpetrated, a fraud on the court. Bridge asserted that throughout the case, Osterland

10.

had lied to the court and, if the court had known the truth, it would not have made the custody orders it did. He also asserted he filed his series of motions in a good faith effort to reestablish a custody schedule that would permit Christian to spend equal time with him.

On September 14, Bridge filed a responsive declaration to the papers Osterland filed on August 28 and issues raised at the August 30 hearing. He renewed his request for an evidentiary hearing and asked the court to consider extending his Monday visits to 3:15 p.m.

At the September 27, hearing, the court noted it had reviewed the declarations and moving papers associated with the motions filed by Bridge and Osterland, as well as the independent evaluation of Dr. Hedberg that Bridge filed and the family recommendation counselor's report.[4] Bridge did not have any additional evidence to offer. Bridge's counsel stated during the hearing that while Bridge agreed with the counselor's recommendation of a Wednesday overnight visit with Christian "to the extent that it offers him the extra time," he did not agree with the actual schedule, as he wanted after-school pickups on that day, rather than pickups at 6:00 p.m., and he was concerned about tutoring Christian was receiving on that day. The court asked whether the midweek visit contradicted what Dr. Hedberg said needed to take place, i.e. to limit the number of exchanges between the parties, which it thought made sense because it was clear Christian had anxiety issues due to parents' relationship, which was impacting him academically.

Bridge's counsel also argued the court should order that no corporal punishment be used and that there be a provision for telephonic communication with the noncustodial parent, which the counselor recommended. As far as changed circumstances, Bridge's

---

[4] Neither the family recommendation counselor's report nor Dr. Hedberg's evaluation are part of the appellate record.

11.

counsel agreed Bridge was relying on two things: the contempt finding and the academic performance. Bridge's counsel added as a third changed circumstance: Osterland's recent interference with Bridge's visitation.

The court recognized that there was an equal timeshare at one point in time and that Bridge decided to give up a portion of that time in Christian's best interest. The court was concerned, however, with providing stability and continuity for Christian, and viewed that as a heightened factor in considering whether it was in Christian's best interest to change custody or visitation where, as here, the child was suffering anxiety, stress, and emotional issues because of the contention between the parties.

Osterland's attorney advised the court that Osterland agreed with the counselor's recommended schedule, which gave her visitation on the second and fourth weekends of the month, and gave Bridge visits on Wednesdays from 6:00 p.m. to Thursday morning. The court was surprised she agreed, given its concern that Christian needed stability and continuity. Osterland's attorney explained that Christian's routine would not be disrupted with the change, as he would merely be going to his father's house to spend the night during the week after completing his regular after-school routine. Osterland also did not object to returning to the Sunday overnight during Bridge's weekends.

After completion of argument, the court found there were no changed circumstances and that Bridge's declaration "indicates that the filing of the motion did not envision really changed circumstances, it was simply his displeasure with the previous order that was issued on May 17th, 2011." The court found that Bridge brought the motion because he "simply did not like the previous order" and he "intend[ed] to come back to court until that order I don't like is changed, regardless of what the circumstances are, that appears to be in bad faith" based on statements in Bridge's declaration filed with the July 12 motion that (1) Osterland would likely argue he "will keep bringing her back to court until I again have an equal parenting plan (which I respectfully assert I should not have been deprived of in the first place);" and (2) his

12.

filing of "various motions with this court does not make me litigious, rather, it shows that I am determined to regain the equal amount of time my son could spend with me under our previous orders .…" The court believed Bridge was attempting to relitigate the May 17, 2011 order, as the magistrate would have been aware of the contempt circumstances when issuing that order; it did not see any additional facts or circumstances brought forth.

Accordingly, the court did not see any changed circumstances that would warrant modifying the current custody order. In explaining its decision, the court added that its findings were further supported by the facts that Bridge had been back in court repeatedly to amend the same order, which requests had all been denied, and to the child recommending counselors six or seven times in the last six years with the same results, and Bridge's actions were attempts to hold the court and Osterland hostage until he got his way. As to visitation, the court found it was in Christian's best interest to adopt the child custody recommending officer's recommendation, except for nightly telephone calls. The court declined to designate either spouse to make decisions, as Osterland's attorney had requested, as it was modifying visitation and hoped that "with [the] additional time" Bridge might become less contentious and litigious in the proceedings, which in turn might foster a better relationship with Christian and relieve his anxiety. The court also declined to impose sanctions on Bridge, but warned him it may do so in the future if he filed more motions with "frivolous claims."

The court's written order, filed October 17, states that it found (1) there was no change of circumstances to modify the current custody order as requested by Bridge; and (2) it is in the child's best interest to adopt the "Child Custody Recommending Counseling Report filed on September 20, 2012 with regard to a modification of visitation[,]" with the exception of telephone contact between the parents and child. Accordingly, the court modified the previous order filed May 17, 2011, to give Bridge visits on the first, third and fifth weekends of the month from 6:00 p.m. Friday to Monday morning, and Osterland visits on the second and fourth weekends of the month.

13.

Bridge was given, in addition to weekend custodial time, visits each Wednesday from 6:00 p.m. to Thursday morning, when the child is delivered to school.

## DISCUSSION

On appeal, Bridge challenges the trial court's orders (1) denying his request to change custody, (2) altering the visitation schedule to provide him with an overnight visit each Wednesday but eliminating one of his weekend visits, and (3) denying his request to appoint an expert under Evidence Code section 730 to evaluate custody issues.[5]

*Custody and Visitation Orders*

We begin with the custody and visitation orders. The trial court and the family have wide discretion to choose a parenting plan that is in the best interests of the child. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) Once there has been a final or permanent custody determination, the parent seeking to alter the order for legal and physical custody can do so only on a showing that there has been "'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37 (*Marriage of Burgess*).) If the requested modification would only alter the parenting or visitation schedule, leaving the existing custody order intact, the parent seeking such a change is not required to show changed circumstances; instead, the trial court applies the best interest of the child standard. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077-1080.)

_____

[5] Osterland contends the October 17, 2012 order which Bridge appealed from is a temporary order that is not appealable. We disagree, as it is established that a trial court's ruling on a parent's request for modification of judgment as to custody and visitation is appealable as an order made after judgment. (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377.) We also decline Osterland's request to dismiss the appeal based on *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 557 (*Lester*), which held that an appellate court has discretion to strike an opening brief that fails to include an adequate statement of appealability.

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.) "The test is not whether this court would have made the same order or whether the trial court could have reasonably made some other order, but 'whether the trial court could reasonably have concluded that the order in question advanced the "best interest" of the child.'" (*Lester, supra,* 84 Cal.App.4th at p. 595.)

Here, the trial court denied Bridge's request to modify the custody order because it did not find changed circumstances. Bridge asserts the trial court abused its discretion in so finding because it disregarded Osterland's contempt conviction even though the court that found her in contempt expressly stated that it could be used in the future on issues of custody. In so asserting, Bridge cites *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359 (*Horsford*), in which this court explained that an abuse of discretion occurs when the trial court "'transgresses the confines of the applicable principles of law ….'" (*Id.* at p. 393.) Likening the prior court's statement that the contempt conviction could be used in the future to a principle of law, he argues that Osterland's conviction was a "crystal clear change of circumstances" that came into existence only after the May 17, 2011 order which the trial court could not disregard.

As Osterland points out, the trial court did not disregard her contempt conviction; instead, it considered and evaluated it, and concluded that it was insufficient to justify changing custody. A prior custody order should not be changed ""'unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change."'" (*Marriage of Burgess*, *supra*, 13 Cal.4th at p. 38.) Here, the trial court reasonably could find that Osterland's

15.

contempt conviction, based on her admission that she had her son baptized without notifying Bridge, did not render a change of custody essential or expedient for Christian's welfare. The court's statement that the contempt conviction could be used in future proceedings was not a principle of law, therefore *Horsford* does not apply. Moreover, that court did not designate the conviction as a fact that would justify a change in custody; instead, it simply stated that its relevance and weight depended on the parties' future issues.

Bridge also asserts the trial court erred in ignoring, as a "[v]alid [c]hange of [c]ircumstances," Osterland's history of misrepresentations to the court as outlined in his declarations, which he asserts shows her lack of veracity. While Bridge set forth his allegations regarding Osterland's credibility in his declarations, his attorney conceded at the hearing that the changed circumstances upon which Bridge relied for his modification request were the contempt conviction, Christian's academic performance, and Osterland's interference with Bridge's visitation. Accordingly, his claim on appeal that the trial court erred in ignoring this history as a change of circumstances has been forfeited. (See, e.g., *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 [generally, an appellate court will not consider a matter presented for the first time on appeal]; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381 [failure to raise issue or argument in trial court will result in it being forfeited on appeal]; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226 [same].)

Just as Bridge has not demonstrated the trial court erred in denying his request to modify custody, he has not shown the trial court abused its discretion in modifying visitation. Bridge contends the trial court abused its discretion when it eliminated a weekend visit for him while giving him an additional midweek overnight visit because the record shows it was "objectively confused" about the terms of the current order and what the counselor recommended. He asserts the trial court's comments during the

16.

hearing indicate it intended to supplement his time, not reduce it by removing a weekend visit. He argues this was an abuse of discretion because the trial court could not have concluded reasonably that the visitation order advanced Christian's best interests since eliminating one of Bridge's weekends did not promote Christian's need for continuity and stability.

Bridge, however, did not object to the visitation order on this basis or otherwise raise this issue in the trial court. When the trial court asked if he agreed with the counselor's recommendation, Bridge's attorney stated he did to the extent it offered Bridge "the extra time," and objected only to the recommended midweek pickup time. No objection was raised that Bridge's time was being reduced by the counselor's recommended schedule. Ordinarily, a reviewing court will not consider a challenge to a ruling if an objection could have been but was not raised in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Therefore, Bridge's claim is forfeited.

Even if we were to consider the claim, it fails. There is nothing in the transcript of the hearing that shows the court misunderstood the order it was making, i.e., that it was giving Bridge a midweek visit while eliminating a weekend visit. Moreover, it is well established that we review the trial court's decision rather than its reasoning. (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.) Here, the trial court reasonably could have concluded that while the visitation order eliminated one of Bridge's weekends and gave it to Osterland, and added a midweek overnight visit for Bridge, the order nevertheless advanced Christian's best interest since the midweek visit would not disrupt Christian's schedule, providing Osterland an additional weekend would give her more quality time with Christian, and the changes would improve the nature and quality of time with both parents.

Bridge also contends the trial court "directed the wrong transcript" be sent to the recommending counselor when it ordered that the counselor be provided with the transcript of the August 30 hearing rather than the "transcript that the court had expressed

17.

it thought was important," the August 7 hearing transcript. Bridge asserts the error "unfairly biased" the recommending counselor and was an arbitrary judicial action that resulted in a miscarriage of justice.

As Osterland points out, the trial court sent the transcript it intended to send, as it sent the August 30 transcript to illustrate its view of the August 7 proceedings and the parties' conduct between the two hearings. Moreover, Bridge fails to demonstrate prejudice by providing an adequate record for us to review. It is Bridge's burden, as the appellant, to establish both an abuse of discretion and miscarriage of justice. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Id.* at p. 564.) "'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.'" (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*).) The record does not contain the recommending counselor's report. Without that report, we cannot review Bridge's claim that providing the counselor with the August 30 transcript unfairly biased him or resulted in a miscarriage of justice.

In sum, Bridge has not shown any error with respect to the trial court's orders denying his request to change custody and modifying visitation.

*The Evidence Code Section 730 Evaluation*

Bridge contends the trial court erred when it (1) denied his request to appoint an expert under Evidence Code section 730, and (2) gave him permission to obtain his own expert's opinion, yet interfered with his ability to do so.

Evidence Code section 730 permits a trial court to appoint an expert to investigate, render a report, and testify to a matter for which expert evidence is required by either the

court or any party to the action.[6]  While Bridge contends the review of a decision not to appoint an expert is for substantial evidence, the appointment of an expert under this statute is discretionary with the court.  (*McGuire v. Superior Court* (1969) 274 Cal.App.2d 583, 598, disapproved on another ground by *Prudhomme v. Superior Court* (1970) 2 Cal.3d 320, 327 fn. 11.)  Since the decision is discretionary, the review is necessarily for an abuse of discretion.  Bridge contends the long history of problems between the parents, as evidenced in the record, shows the need for a psychological expert to prepare a custodial evaluation.  The trial court, however, reasonably could conclude that it did not need to appoint a psychological expert, despite the parties' long-standing problems, as it could obtain the opinion of the recommending counselor on the issues of custody and visitation.  Bridge does not explain why the counselor's opinion was not adequate to address the custody and visitation issues before the court, and therefore has not shown that the court abused its discretion in denying his request to appoint a psychologist.

Bridge also asserts the trial court acted arbitrarily toward him when it permitted him to obtain an independent psychological evaluation but, at the same time, made it "practically impossible" for him to obtain a "full and complete" evaluation by eliminating his weekday custodial time.  He asserts that without the ability to have Christian evaluated during weekdays, when the expert was available, he had to use an opinion that was based only on data from two sessions with Christian, resulting in a miscarriage of justice.

---

[6] Evidence Code section 730 provides, in pertinent part:  "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required.…"

19.

Presumably Bridge is referring to the report of Dr. Hedberg, which he submitted at the September 27 hearing and which the trial court considered along with the recommending counselor's report when issuing its orders. Neither of these reports, however, are part of the appellate record. Failure to include them precludes us from assessing whether any purported error was prejudicial, as we cannot tell whether Dr. Hedberg had sufficient information upon which he could base on opinion or whether the trial court erred in accepting one opinion over the other. As we have explained, it is Bridge's burden to provide a record that is adequate for meaningful review. (*Gee*, *supra*, 99 Cal.App.4th at p. 1416.) He has failed to do so.

Moreover, the record does not reveal that the trial court interfered with his ability to obtain an expert opinion. The trial court advised Bridge at the August 7 hearing that he could obtain an expert opinion on his own, but he would not order Osterland to participate. Rather than consult with Osterland to coordinate an examination of Christian, Bridge unilaterally kept him out of school during Osterland's custody time to obtain an evaluation. When this came to the trial court's attention on August 30, the trial court reminded Bridge that he could take Christian to see an expert during his weekend custodial periods, but could not take Christian during Osterland's custody time. Nothing the trial court did prevented Bridge from appropriately scheduling a reasonable psychological assessment.

In sum, Bridge has not established any error with respect to the trial court's denial of his request to appoint an expert under Evidence Code section 730, or that it interfered with his ability to obtain an independent evaluation to his prejudice.

*Sanctions*

Osterland has moved this court for an order awarding sanctions against Bridge for filing a frivolous appeal, arguing that no reasonable attorney would view the appeal as having any conceivable merit and the appeal's primary purpose was to impose unjust hardship and expense on her.

20.

Code of Civil Procedure section 907 provides that the reviewing court may add damages to the costs on appeal when it appears that the appeal was "frivolous or taken solely for delay …." An appeal is frivolous "when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

We cannot find that the appeal was taken solely for delay or prosecuted for an improper motive. We do find, however, that the arguments presented in this appeal are totally without merit. No reasonable attorney could have concluded that there was any merit in Bridge's claims. For that reason, we find that the appeal is frivolous.

While the opening brief was filed by the attorney who represented Bridge in the trial court, we subsequently granted the attorney's motion to withdraw after the respondent's brief was filed but before the reply brief was due. Bridge, who is not an attorney, now represents himself on appeal. He has not filed a reply brief. While courts have imposed sanctions on appellants who prosecuted appeals in propria persona, those appellants were either attorneys, had legal backgrounds, or had substantial assets. (Cf. *Banks v. Dominican College* (1995) 35 Cal.App.4th 1545, 1559; *Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 310-313; *In re Marriage of Stich* (1985) 169 Cal.App.3d 64, 75-78.)

Here, there is no indication in the record that Bridge has any legal background or that he has substantial assets. Accordingly, we decline to award sanctions. As noted by the court in *Kabbe v. Miller* (1990) 226 Cal.App.3d 93, 98, "We do not believe it is appropriate to hold a propria persona appellant to the standard of what a 'reasonable attorney' should know is frivolous *unless and until that appellant becomes a persistent litigant*." (Italics added.)

21.

## DISPOSITION

The judgment is affirmed.  The motion for sanctions is denied.  Respondent is awarded her costs on appeal.

_____

Gomes, J.

WE CONCUR:


_____

Cornell, Acting P.J.


_____

Detjen, J.